United States District Court
Southern District of Texas
FILED

289

APR 25 2001

Michael N. Milby
Clerk of Court



IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | |
|---|---|
| RAQUEL O. RODRIGUEZ AND JOSE L. RODRIGUEZ § § § VS. § § RIDDELL SPORTS, INC., § RIDDELL, INC., § ALL AMERICAN SPORTS § CORPORATION § d/b/a RIDDELL/ALL AMERICAN; § CHRIS HOODMAN; MONARCH § RUBBER COMPANY; § AND RUBATEX CORPORATION § | CAUSE NO. B-96-177 |

## MOTION TO EXCLUDE TESTIMONY OF RICHARD STALNAKER

TO THE HONORABLE UNITED STATES DISTRICT COURT:

RIDDELL, INC. AND ALL AMERICAN SPORTS CORPORATION ask the Court to exclude the testimony of Richard L. Stalnaker because (1) he is not qualified and (2) his opinions do not pass the Daubert test of relevancy and reliability.

1. Defendants hereby request an evidentiary hearing prior to trial with adequate notice to all parties so as to be able to bring witnesses to the hearing on whether Richard L. Stalnaker's opinions are sufficiently relevant and reliable to pass the requirement of the Daubert V. Merrell Dow Pharmacy, 509 U.S. 579 (1993) and cases interpreting and applying it.

2. Rule 702 has been amended since the original trial of this case to include the standards for admissibility of expert testimony announced in Daubert v. Merrill Dow Pharmaceutical, Inc., 509 U.S. 579 (1993). All expert testimony is also governed by Rule 104(a) which requires the proponent to meet the burden of establishing

admissibility requirements by a preponderance of evidence. See <u>Bourgaily v. United States</u>, 483 U.S. 171 (1987).

Rule 702 F.R.C.E. reads as follows:

Rule 702. Testimony of Experts

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise: if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

3. Dr. Stalnaker is not qualified by knowledge, skill, experience, training or education to render opinions in this case, (A) pertaining to accident reconstruction - including the speed and forces impacting VSR helmeted head, (B) causation and mechanism of brain injury, (C) defective design of the VSR-4 helmet including his proposed alternative design.

4. Dr. Stalnaker has no knowledge, experience or training directly relevant to the sport of football other than testifying against helmet manufacturers in litigation. What is required is that the offering party establish that the expert has knowledge, skill, training or education regarding the specific issue before the court which could qualify the expert to give an opinion on that particular subject. <u>Broder v. Heise</u>, 924 S.W. 2(e) 148, 151-152 (Tex 1996) on Tex.R.Evid. 104(a) (identical to FR 104) emphasis added.

5. Dr. Stalnaker's opinions are inadmissible because they are not based on sufficient facts or data, are not based on reliable recognized principles and methods

such principles and methods have not been applied reliably to the facts of this case. Dr. Stalnaker's opinions regarding accident reconstruction of the play, velocity of impact, causation and mechanism of brain injury are not based on reliable principle and methods and have not been related reliable to the facts of the case.

6. Dr. Stalnaker's opinion regarding the velocity/force of impact changed at each of the three depositions he gave (depositions taken April 28, 1998, August 5, 1998 and January 27, 1999), his most recent opinion regarding the velocity at impact is impermissible based upon Daubert and Watkins. Specifically, the method of calculations used are improper, the analysis is fatally flawed, and the principals of physics are so loosely followed which makes the testimony impermissible. See Watkins 121 F3d @ 991. (See affidavit of Dr. Lawrence Thibault previously filed herein.)

7. Dr. Stalnaker's opinions regarding the alleged defective design of the VSR-4 helmet are based on testing performed by others. Dr. Stalnaker has never performed a NOCSAE test personally.

8. Dr. Stalnaker agrees at his April 28, 1998 deposition on Page 170 that the NOCSAE Standard is the only one applicable to football helmets, however he also admits that the testing did not comply with the NOCSAE requirement standards or operating procedures. See Exhibit "A", Page 126-128. Furthermore, Stalnaker admits that the helmet was tested at a 7 foot drop height for impact results despite the NOCSAE standard requiring only a five foot drop to arrive at results. See Exhibit "D", August 5, 1998 deposition of Stalnaker, Page 29 and 47.

The drop tests, performed for Stalnaker allowed the helmet to land on an anvil to

register its results. He assumes that an anvil has the same hardness as the turf at the football field, to opine that Plaintiff's hit on the ground was severe. See Exhibit "D", page 44, line 3-20. Stalnaker agrees that this is simply an assumption, however it clearly creates inaccurate results in that the forces of hitting an anvil compared to hitting the turf of a football field are in fact different. This clearly violates the <u>Watkins</u> test adopting Daubert.

9.     Dr. Stalnaker's attempt at an "alternative design" does not meet the requirements of Texas law defining that term as there has been no evaluation of the functioning of the new design or assurance of its safe use. In <u>Peitzmeir v. Hennessy Industries Inc.</u>, 97 F 3rd 293(8th Cir. 1996), the testimony of Plaintiff's expert was held inadmissible under <u>Daubert</u> standards because his concept of an alternative design that conceivably might have prevented the accident in question was not subject to any feasibility testing. The expert's opinion without fortification of feasibility testing was nothing more than speculation.

        Dr. Stalnaker's redesign of the side pad only is inadequate as an alternative design and his testing of the new padding is only half of the helmet shell is not an acceptable method and not in compliance with the NOCSAE Standard. His test results are invalid and misleading. As they show lower severity index readings which would not be the case if the whole helmet contained his proposed padding. (See affidavit of Halstead Technical Advisor to NOCSAE)

10.    Dr. Stalnaker's opinion regarding defect on football helmets such as the VSR-4 have never been published, never been held up for peer review, go against the preponderance of epidemiological evidence and published studies relevant to football.

"Where sound epidemiological studies produce opposite results from non epidemiological ones, the rate of error of the latter is likely to be quite high." Raynor v. Merrill Dow Pharmaceuticals, Inc., 103 F3rd 1371 (D.C. Civ. 1997) See also Haggerty v. Upjohn Co., 950 F.Supp. 1160 (S.D.Fla. 1996) when testimony of plaintiff's expert was held not to satisfy Daubert because it ignored epidemiological evidence, she didn't consider alternative causes, and her hypothesis was unlisted and not peer-reviewed. Dr. Stalnaker's conclusion regarding the defective VSR-4 helmet is contrary to well accepted studies that do not support helmet causation of head injuries.

11.  It is the purpose of this motion to exclude the opinions of Richard L. Stalnaker with regard to: 1) 22 feet per second being the speed of Jose Rodriguez's helmeted head when it impacted the turf; 2) that the impact between the helmet and the turf was a producing cause or cause in fact of the subdural hematoma; 3) that when there is an impact in a football game similar to the one involving the play in question there is an 18% probability of an AIS4 brain injury; 4) that Richard L. Stalnaker's safer alternative design will produce the probability of an AIS4 brain injury to 8%; 5) that a safer alternative design to the VSR-4 helmet is to: a) remove the yellow foam and replace it with gray foam; b) put additional foam in the helmet in the areas between the existing foam and c) using the new Rubatex or Monarch foam in lieu of the old.

These opinions are not relevant and reliable because they are arrived at using:

1)   theories or techniques that cannot be or have not been tested;

2)   theories or techniques that have not been subject to peer review or publication;

3)   techniques without a known or potential rate of error; and

4)   theories or techniques without general acceptance by the scientific community involved in the design, manufacture, or use of football helmets.

12.   A subdural hematoma is always the result of rotational acceleration with the qualification that you are not dealing with penetrating injuries, i.e. gunshot, ax wound or something that actually goes in and stretches and or tears the vessel.  But if it is the result of a closed head injury, when the Plaintiffs offer evidence through Stalnaker that the subdural hematoma was brought about by direct translational forces they should be required to bring to the Court a technique or theory that has been scientifically proven to be reliable, peer reviewed, published that establishes that such can be the case, i.e. that subdural hematomas can be caused by direct translational forces in the case of a closed head injury.  Likewise, if the Plaintiffs claim that the helmet bottomed out causing the subgalea edema without causing a skull fracture as testified to by Dave Halstead, the Plaintiff have the burden and must come forward with evidence of a theory or technique that establishes that you can have a bottoming out of the helmet without having a skull fracture and this techniques should be one that is reliable, accepted in the scientific community, has been peer reviewed, can be validated and is not mere speculation or opinion unsupported by data.

WHEREFORE, PREMISES CONSIDERED, Defendants respectfully requests that this Motion be in all things granted and for any and all further relief which this Honorable Court deems appropriate.

Respectfully submitted,

Robert L. Guerra
State Bar No. 08578560
THORNTON, SUMMERS, BIECHLIN,
DUNHAM & BROWN, L.C.
418 E. Dove
McAllen, Texas 78504
956-630-3080 Telephone
956-630-0189 Facsimile

ROBERT B. SUMMERS & ASSOCIATES
P. O. Box 398
Llano, Texas 78643
(915) 248-0033-Phone
(915) 248-0110-Fax

BY _____
ROBERT B. SUMMERS
State Bar No. 19507000
ANN H. MEGEE
State Bar No. 13902700
Attorneys for Defendants

## CERTIFICATE OF CONFERENCE

This is to certify that I had a conference with Plaintiffs' counsel, Rex Blackburn, and he refused to agree to this motion.

_____
Robert Summers

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the above was forwarded by telefax transmission and certified mail, return receipt requested to counsel of record on this the 25th day of April, 2001.

Mr. Rex Blackburn
**EVANS, KEANE L.L.P.**
1101 W. River Street, Suite 200

P.O. Box 959
Boise, Idaho 83701-0959
VIA FAX 208-345-3514
Telephone 208-384-1800

Mr. Mark D. Kamitomo
**THE MARKAM GROUP, INC., P.S.**
421 West Riverside, Suite 1060
Spokane, WA 99201
VIA FAX 509-747-1993
Telephone 509-747-0902

Mr. J. Arnold Aguilar
1200 Central Blvd.
Artemis Square, Suite H-2
Brownsville, TX 78520
VIA FAX 956-504-1408
Telephone 956-504-1100

Mr. Mark T. Curry
**HUGHES, WATTERS & ASKANASE, LLP**
1415 Louisiana, 37th Floor
Houston, Texas 77002
VIA FAX 713/759-6834
Telephone 713-759-0818

Mr. Ramon Esparza
Renfro, Faulk & Blakemore
185 Ruben M. Torres, Sr. Blvd.
Brownsville, TX 78520
via fax 956-541-9695
telephone 956-541-9600

_/s/ Robert Summers_
Robert Summers