301

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

APR 2 7 2001

Michael N. Milby
Clerk of Court

RAQUEL O. RODRIGUEZ, as legal
Guardian of JOSE L. RODRIGUEZ,

        Plaintiff,

Vs.

RIDDELL INC.; and ALL AMERICAN
SPORTS CORPORATION, d/b/a
RIDDELL/ALL AMERICAN,

        Defendants.

Case No. B-CV-96-177

## PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DESIGNATE REBUTTAL WITNESSES, TO REOPEN DISCOVERY AND FOR CONTINUANCE

### INTRODUCTION

Defendants have materially misrepresented the facts, made blatantly false claims

regarding the testimony of their own experts, and, under the guise of "new" issues, assert

arguments previously addressed and rejected by this Court.  Based upon the true and

established facts of record, there is no basis to allow Defendants to designate additional

witnesses, reopen discovery, or delay retrial of this case.  Defendants do not meet their legal

burden of proving manifest injustice or prejudice because Defendants have offered no

explanation why the proffered evidence could not have been offered at the first trial.  *Martin's*

*Herend Imports, Inc. v. Diamond & Gem Trading United States of America Co.*, 195 F.3d

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DESIGNATE
REBUTTAL WITNESSES, TO REOPEN DISCOVERY AND FOR CONTINUANCE - 1

765, 775 (5th Cir. 1999). In fact, such evidence was offered by Defendants at the first trial and the additional witnesses were available to Defendants and presumably not used for tactical reasons. Additionally, in light of the pretrial date of April 26, 2001, Plaintiff would be unduly prejudiced if Defendants were allowed to call additional witnesses and conduct additional discovery. *Id.* In light of the facts of record it would constitute an abuse of this Court's discretion to grant Defendants' Motion.

As a preliminary matter, contrary to Defendants' assertion, their motions were not presented at the earliest practical time because Defendants have been aware of the pending pre-trial conference since April 9, 2001 when this Court gave verbal notice to all parties of the new trial. Additionally, this case was remanded to this Court by the Fifth Circuit based solely upon the combining of the Defendants on the jury charge and did not include a mandate to reopen discovery or allow additional witnesses.

Notwithstanding the fact Defendants' motions have no merit, Plaintiff submits the following argument in response to the issues raised by Defendants. For purposes of brevity, plaintiff will separate Defendants' arguments into three main categories:

1. Defendants' claimed need to reopen discovery (paragraphs 4,5,7, 13-18 of Defendants' Motion);

2. Defendants' alleged need for additional witnesses (paragraphs 8-11 and 17 of Defendants' Motion);

3. Defendants' request for a continuance due to the alleged unavailability of witnesses and counsel for retrial (paragraphs 2,6,12,13,19-26 of Defendants' Motion).

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DESIGNATE REBUTTAL WITNESSES, TO REOPEN DISCOVERY AND FOR CONTINUANCE - 2

## ARGUMENT

### I.   SINCE ALL FACTUAL EVIDENCE WAS AVAILABLE TO DEFENDANTS BEFORE THE FIRST TRIAL, THE COURT SHOULD NOT REOPEN DISCOVERY.

Defendants' Motion revisits old issues decided by this Court in the first trial. Any claimed lack of discovery is due to Defendants' continued gamesmanship, trial tactics and their counsel's failure to make their experts available for deposition.

#### A. Neuroradiologist.

With respect to the issue of discovery relating to evidence of Jose Rodriguez's subgaleal edema (an extracranial scalp injury), Defendants raised this issue for the first time months before the first trial. Defendants' expert, Ayub Ommaya, M.D., testified in deposition that the presence of extracranial damage on Jose Rodriguez's CT scans would unequivocally establish that the Riddell helmet "failed." (Deposition of Ayub K. Ommaya, M.D. dated November 18, 1998, p. 63, l. 7-p. 64, l. 2). Dr. Ommaya further stated in deposition that he reviewed Jose Rodriguez's CT scans and that they demonstrated no evidence of scalp injury. Plaintiff then immediately sought to have this new issue reviewed, and promptly disclosed Dr. Gary Stimac, a neuroradiologist, and Dr. John White, a neurosurgeon, as rebuttal experts to address the presence of scalp injury.

Defendants' assertion that Plaintiff and the Court caused an unnecessary delay in discovery beyond Defendants' control on this issue is blatantly false. On January 25, 1999, Defendants filed a Motion to Strike Plaintiff's Rebuttal Testimony [filed as Docket No. 95] for the same reasons upon which they now urge the Court to reopen discovery. The Court, after considering the fact that any delay in disclosure of Drs. Stimac and White was the result of

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DESIGNATE REBUTTAL WITNESSES, TO REOPEN DISCOVERY AND FOR CONTINUANCE - 3

Defendants' own untimely disclosure of experts and Defendants' failure to make these experts available for deposition, denied Defendants' Motion [Docket No. 101]. Rather than restate them here, the facts surrounding the identification of Jose Rodriguez's scalp injury and related expert testimony is accurately set forth in Plaintiff's Opposition to Defendants' Motion to Strike Drs. Stimac and White [filed as Docket No. 97] and will not be restated in full here.

After the Court denied Defendants' Motion, Defendants did not attempt to take the depositions of Drs. Stimac and White to determine their opinions. Rather, on February 2, 1999, Plaintiff was forced to take the extraordinary step of filing a Motion for Protective Order which in part sought to compel the Defendants to promptly take the aforementioned depositions [See Docket No. 103]. Defendants failed to attend the hearing on Plaintiff's Motion for Protective Order. [See minute entry on hearing on Motion for Protective Order; Docket No. 104]. It was only after the Court ordered Defendants to take the depositions of Drs. Stimac and White that the Defendants actually did so.

Moreover, on February 11, 1999 the Court allowed Defendants an opportunity to retain expert neuroradiologists to address Dr. Stimac's and Dr. White's testimony. [See minute entry granting Defendants' Motion to Extend Time to Designate Rebuttal Witnesses; Docket No. 111]. At that hearing, defense counsel, Robert Summers, informed the Court he had been looking for a neuroradiologist, had the name of one, and was going to contact him. (See transcript of February 11, 1999 hearing, p. 28).

Based upon Mr. Summer's representations to Magistrate Black, the Court granted Defendants' leave to find a neuroradiologist and present a report to plaintiff within one week of jury selection. [Docket No. 111]. Later, Mr. Summers represented to Judge Vela and

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DESIGNATE REBUTTAL WITNESSES, TO REOPEN DISCOVERY AND FOR CONTINUANCE - 4

Plaintiff's counsel on February 19, 1999, that he was going to give Plaintiff a neuroradiologist's report "within one week." (See transcript of telephonic pre-trial conference dated February 18, 1999, pp. 18-19).

Not only did Mr. Summers fail to provide the neuroradiologist's report or retain a neuroradiologist, he hired two completely new experts, Lawrence Thibault, a biomechanist, and Robert Jones, M.D. a neuropathologist, to testify about a new defense - - the alleged existence of an old blood clot. Neither expert was offered to rebut Drs. Stimac and White, as Defendants had represented to this Court. On March 3, 1999, at approximately 4:00 p.m., just two days before jury selection, Defendants disclosed the opinions of Drs. Thibault, Jones and Ommaya alleging that Jose Rodriguez's acute subdural hematoma was old blood, which pre-existed his accident. This was a completely new issue, based upon an analysis of a pathology slide of Jose Rodriguez's subdural hematoma. This slide had been available for Defendants' review for at least 3 years prior to Defendants' review. Over Plaintiff's objections, the Court allowed Defendants' experts to testify at trial on this new issue with the proviso that the Defendants make them available for deposition the following day, March 4, 1999. The Court ruled that any witness who was not made available for deposition would not be allowed to testify at trial. Defendants produced only Drs. Ommaya and Thibault for deposition; thus Dr. Jones was not allowed to testify.

### B. Neuropathology.

Defendants completely ignore the fact that the Court allowed Dr. Ommaya, a neurosurgeon, to testify to neuropathological issues -- the age of the clot -- based upon Dr. Ommaya's independent analysis of the slide of Jose Rodriguez's subdural hematoma. (See

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DESIGNATE REBUTTAL WITNESSES, TO REOPEN DISCOVERY AND FOR CONTINUANCE - 5

deposition of Dr. Ommaya, March 15, 1999, pg. 51, 1. 2-5 read to the jury).  Dr. Ommaya

also was allowed to testify at trial regarding the alleged absence of subgaleal edema even

though he was not a neuroradiologist.  Moreover, the Court permitted Dr. Gennarelli, another

defense expert neurosurgeon, to also testify regarding the age of the clot.  (Transcript p. 1370-

1372)

Accordingly, due to Defendants' last minute disclosure of their new defense theory and

witnesses, the Court allowed Plaintiff to find and identify a rebuttal neuropathologist expert,

Dr. Hannes Vogel.  The Court imposed the same obligation on Plaintiff -- to make Dr. Vogel

available in Brownsville for deposition during trial -- as he had imposed upon the Defendants

with respect to their late disclosure of Dr. Jones and Mr. Thibault.  Plaintiff did as the Court

requested, thus the Court allowed Dr. Vogel to testify at trial

### C. Field Testing.

Defendants also claim, in paragraph 13 of their Motion, that they need to conduct

additional testing on the field in an attempt to replicate the conditions which existed on the day

of Jose's injury.  Prior to the first trial, Defendants performed drop testing at the subject field,

Leo Aguilar Stadium.  Plaintiff moved to exclude this testimony at trial on the grounds that the

testing was not "substantially similar" to the conditions which existed at the time and place of

Jose Rodriguez's accident. (See Plaintiff's Motion in Liminie No. 2; Docket No. 127).

Defendants responded to the motion, and this Court preliminarily granted Plaintiff's motion,

but the Court later allowed Defendants an opportunity to submit an offer of proof on the

similarity of their testimony.  Defendants failed to do so.  Defendants now seek to revisit the

same issue already rejected by this Court, by reference to other field testing data involving

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DESIGNATE
REBUTTAL WITNESSES, TO REOPEN DISCOVERY AND FOR CONTINUANCE - 6

designs, on helmets other than the VSR-4. *See* Exhibit B to Defendants' Motion.

### D. Third Deposition of Raquel Rodriguez.

Defendants also claim the need to re-depose Raquel Rodriguez on the issue of damages. Another deposition, which would be the Defendants' third deposition of Mrs. Rodriguez, is unnecessary and intended solely to harass Plaintiff. Jose Rodriguez's condition is unchanged from the first trial; he is still in a vegetative state. Thus testimony concerning his life expectancy and future medical care is unchanged. Consequently, there is no new information which would assist Defendants' expert Thomas Generalli in altering his testimony from the first trial concerning Jose Rodriguez's life expectancy and future medical care.

### E. Further Deposition of Dr. Fennegan.

With respect to Defendants' purported need to re-depose Dr. Fennegan, Defendants fail to provide the following facts:

1.  Defendants deposed Dr. Fennegan before the first trial and obtained his opinions;

2.  Defendants attempted to offer Dr. Fennegan's deposition testimony at trial;

3.  The Court properly required Defendants to present Dr. Fennegan's live testimony since he was within the subpoena power of the Court;

4.  The Defendants elected not to call Dr. Fennegan at trial; and

5.  Dr. Fennegan swore out an Affidavit in which he <u>clarified</u> his opinions, rather than changing his opinions, as Defendants contend in the present Motion.

### F. Independent Medical Examination.

The Defendants' claim that they need additional time to conduct an independent medical examination of Jose Rodriguez is spurious. They had ample opportunity to

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DESIGNATE REBUTTAL WITNESSES, TO REOPEN DISCOVERY AND FOR CONTINUANCE - 7

conduct an IME prior to the first trial. They consciously chose not to do so until days before trial and then moved the Court for an examination, which the Court properly denied. (Docket No. 111.) If such discovery was truly crucial to Defendants' case as they claim, they would have timely conducted the same prior to the first trial.

## F. Written Discovery Responses.

Defendants claim in paragraph 18 of their Motion that they need responses to certain discovery requests, although no motion to compel was made by Defendants before the first trial. Defendants fail to inform the Court that all of the information requested in their written discovery was made available to Defendants and was the subject of trial testimony. Therefore, no further discovery is required.

In short, Defendants had the opportunity to conduct, and did conduct, all of the discovery which they now allege is required. After receiving an unfavorable verdict, Defendants seek to reopen the case on issues already fully discovered and decided. This Court should therefore deny Defendants' Motion to Reopen Discovery, as no manifest injustice would result to Defendants. *See Martin's Herend Imports, Inc. v. Diamond & Gem Trading United States of America Co.* 195 F.3d 765, 775 (5th Cir. 1999); see also *American Int'l Trading Corp. v. Petroleos Mexicanos,* 835 F.2d 536, 539 (5th Cir. 1987) (If the Defendants knew or should have known that the witnesses were necessary at the first trial, the exclusion of these witnesses was not manifestly unjust.)

## II.   DEFENDANTS' EXPERTS TESTIFIED TO EVERY MATERIAL ISSUE IN THIS CASE AT THE FIRST TRIAL OF THIS MATTER; THEREFORE THEY HAVE NOT DEMONSTRATED A NEED FOR ADDITIONAL WITNESSES.

The Defendants' argument that they need to designate additional witnesses to address alleged new issues is without merit. The real reason is summed up best by defense counsel, Robert Summer's statement to plaintiff's counsel, that Drs. Gennarelli, McElhaney and Thibault were "gone" because Mr. Summers "did not like" the way they performed at the first trial. See Declaration of Rex Blackburn submitted herewith.

As support for this meritless position, Defendants' repeatedly misrepresent in their Motion that testimony on certain issues "is unavailable from any other source other than additional witnesses." (*See e.g.* Paragraph 8 of Defendants' Motion).

As the following chart illustrates, Defendants' experts at the first trial testified to every material issue in this case which Defendants now claim require new witnesses.

| Subject Matter | Defendants' Experts in the First Trial | Defendants' Proposed Additional Trial Experts in Second Trial |
| --- | --- | --- |
| Alleged Congenital Defects of Jose Rodriguez | Dr. Garza-Vale (Neurosurgeon) | |
| Alleged Pre-existing Injury (Subdural Hematoma) | Dr. Ommaya (Neurosurgeon), Dr. Genarrelli (Neurosurgeon) | |
| Age of Alleged Subdural Hematoma from pathology slides (neuropathology) | Dr. Ommaya (Neurosurgeon), Dr. Genarrelli (Neurosurgeon); Dr. Jones (Neuropathologist – Defendant's elected not to call) | Dr. Jones |
| Alleged Rotational Injury – Mechanism of Injury | Dr. Ommaya (Neurosurgeon), Dr. Gennarelli (Neurosurgeon), Dr. Thibault (Biomechanical Engineer), Dr. McElhaney (Biomechanical Engineer) | |

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DESIGNATE REBUTTAL WITNESSES, TO REOPEN DISCOVERY AND FOR CONTINUANCE - 9

| Absence of subgaleal edema (extra cranial scalp injury) evidenced on CAT scans | Dr. Ommaya (Neurosurgeon), Dr. Genarrelli (Neurosurgeon) | Dr. Alshare |
|---|---|---|
| Biochemical analysis of injury producing play | Dr. Thibault (Biomechanical Engineer), Dr. Reed (Engineer); Dr. McElhaney (Biomechanical Engineer) | Dr. Newman (Biomechanical Engineer) |
| Epidemiology | Dr. Clark (Epidemiologist), (Court excluded per Motion in Limine, Docket No. 126; Reporters Transcript p. 113). | Dr. Cantu (Neurosurgeon), Dr. Queale (Internal Medicine & Epidemiology) |
| Helmet Design | Mr. Halstead (Helmet Designer), Mr. Kraemer (Riddell VSR-4 Helmet Designer), Mr. Kult | Dr. Newman (Biomechanical Engineer), Mr. Ide (Biomechanical Engineer) |

Defendants also misrepresent to this Court that they had no experts testify regarding the following issues: the age of Jose Rodriguez's subdural hematoma; the existence of extra-cranial damage; and evidence that Jose Rodriguez's CT scan showed infracted tissue rather than bruising or contusions. (Paragraph 8 of Defendants' Motion). To the contrary, Defendants offered testimony from Drs. Ayub Ommaya and Thomas Gennarelli, both neurosurgeons, as to the age of Jose Rodriguez's subdural clot, the existence or non-existence of extra cranial damage and the presence or absence of infarcted tissue in the CT scans. Although Defendants were provided an opportunity to obtain a neuroradiologist by the Court, Defendants failed to do so and instead presented testimony from Drs. Ommaya and Generalli regarding their interpretation of the CT scans.

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DESIGNATE
REBUTTAL WITNESSES, TO REOPEN DISCOVERY AND FOR CONTINUANCE - 10

Moreover, the last minute testimony offered by defense experts regarding the age of Jose Rodriguez's subdural hematoma was allowed over Plaintiff's strenuous objection. Nonetheless, even though this issue could have been addressed three years earlier, the court allowed the Defendants, on the eve of trial, to present such testimony. As a reasonable accommodation to Plaintiff, the Court gave Plaintiff an opportunity to locate and identify a rebuttal expert. The Court also required Plaintiff to make her expert (Dr. Vogel) available for immediate deposition in Brownsville, which Plaintiff did. Defendants did not suffer any prejudice and can not legitimately claim at this time that Plaintiff had an unfair advantage at trial. Any alleged disadvantage to Defendants was entirely of their own making and they should not now be allowed to profit therefrom.

With respect to the alleged need to retain additional biomechanists to analyze the impact, speed and velocity on the last play of Jose Rodriguez's life, at the first trial Defendants offered Drs. Walter Reed and James McElhaney. These experts conducted extensive testing and provided countervailing testimony to Plaintiff's expert, Dr. Richard Stalnaker, who testified that Jose Rodriguez's head was traveling at 22 feet per second at the time of impact. These issues were adequately researched, studied and explored at length by Defendants' biomechanical experts and thus there is no need for further witnesses as Defendants contend.

With respect to the inclusion of Dr. Robert Cantu, a neurosurgeon, and Dr.Queale, an internist, Defendants completely misrepresent to this Court the fact that this Court gave them an opportunity at trial to prove the reliability of the data offered by their first epidemiological expert, Dr. Kenneth Clark. (Tr. pp. 112 – 113). Despite this opportunity, Defendants failed to provide the court with any evidence of the reliability of Dr. Clark's data supporting his opinions.

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DESIGNATE REBUTTAL WITNESSES, TO REOPEN DISCOVERY AND FOR CONTINUANCE - 11

Now, in the same manner as Dr. Clark was presented, Defendants claim that Dr. Cantu and Dr. Queale will be able to provide reliable epidemiologic testimony. Notwithstanding the questionable representation by Defendants that a neurosurgeon and an internist would be able to qualify themselves as epidemiologists, the fact remains that Defendants had an opportunity at the first trial to present the same testimony, but failed to provide this court with any evidence of the reliability of the data. The fact that Defendants failed to do so can hardly be characterized as an acceptable basis upon which to now allow two new experts to testify on the same exact issue Defendants failed to substantiate in the first trial, despite this Court having given them every opportunity to do so.

With respect to Defendants' contention that they need Dr. Kenneth Clark to provide rebuttal testimony to Plaintiff's position in the first trial that the NOCSAE standard is a minimum standard, Defendants fail to inform this court that at the time of trial they offered testimony through helmet designers Nelson Kraemer and David Halstead, in opposition to Dr. Stalnaker's testimony that the NOCSAE standard should be exceeded by 20%. Furthermore, the proposed rebuttal expert, Dr. Kenneth Clark, was already rejected by this court at the first trial because Defendants could not produce any evidence as to the reliability of Dr. Clark's opinions or data.

Finally, with respect to the testimony of Thad Ide, a biomechanical engineer, Defendants' argument for his use is completely without merit or logic. The fact that Mr. Ide was not employed by Riddell at the time of the first trial does not mean that he could not have been called as a witness on behalf of Riddell. The real reason Defendants seek to use Thad Ide is that Defendants' first trial witness, Nelson Kraemer, was impeached on several issues regarding the

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DESIGNATE REBUTTAL WITNESSES, TO REOPEN DISCOVERY AND FOR CONTINUANCE - 12

design of the VSR-4 helmet and the size of the pads utilized in the helmets.  Clearly, Riddell is attempting to merely substitute the testimony of what they perceive to be a better witness.

Defendants' motion to designate additional witnesses is in reality motivated solely by the fact that they failed to prevail with their original witnesses at the original trial.  The Defendants' witnesses testified to every material issue at the first trial.  Plaintiff respectfully request that this Court therefore deny Defendants' Motion.

### III.    DEFENDANTS' MOTION FOR A CONTINUANCE IS DESIGNED SOLELY TO DELAY RETRIAL OF THIS MATTER.

The plaintiff is ready for trial and has expended significant time money and effort to make her witnesses available in Brownsville for an immediate trial.  Defendants, on the other hand, claim that they need a continuance because of the unavailability of certain witnesses and counsel.  Their allegations lack merit and do not justify continuance of the trial.

For example, the medical condition of Riddell's in-house counsel's wife does not justify a continuance because Mr. Lester is not trial counsel, counsel of record or a witness in the case.  Furthermore, the unverified allegations of Mr. Summers regarding his need for physical therapy is unsupported by factual evidence or sworn statements from his physicians.  Mr. Guerra's alleged unavailability is immaterial as he is not lead counsel for Defendants and there are other individuals in Mr. Summer's law firm who should be able to assist him in the trial of this action.

Furthermore, the alleged unavailability of certain defense witnesses does not justify continuance of this trial.  In fact, the Federal Rules of Evidence allow the Defendants to present the prior testimony of their unavailable witnesses by deposition.  At the first trial of this matter, the Defendants relied heavily on videotaped depositions taken during the discovery phase of this

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DESIGNATE REBUTTAL WITNESSES, TO REOPEN DISCOVERY AND FOR CONTINUANCE - 13

case.  Defendants presented Dr. Garza-Vale and Dr. Ommaya by videotape.  Moreover, their

claim that Dr. Gennarelli is required to testify live because he is the only witness who can

testify that a subdural hematoma could be caused by congenital condition is a blatant

misrepresentation, as Dr. Garza-Vale testified to that opinion at trial by videotape.

In short, there is nothing preventing the Defendants from fully presenting their defense

during an immediate retrial of this matter.  A continuance is not warranted.

## IV.

## CONCLUSION

For the foregoing reasons , Plaintiff respectfully requests that the Court deny

Defendants' Motions.

DATED this _26th_ day of April, 2001.

EVANS, KEANE LLP

By _____

Rex Blackburn
State Bar No.3170
Paul J. Augustine
State Bar No. 4608
EVANS, KEANE, L.L.P.
1101 W. River Street, Suite 200
P. O. Box 959
Boise, Idaho  83701-0959
Telephone:  (208) 384-1800
Facsimile:  (208) 345-3514

Mark D. Kamitomo
State Bar No. 18803
THE MARKAM GROUP,INC.
421 West Riverside, Suite 1060
Spokane, Washington  99201
Telephone:  (509) 747-0902
Facsimile:  (509 747-1993

J. Arnold Aguilar
State Bar No. 00936270
Federal ID. No. 6822
Artemis Square, Suite H-2
1200 Central Boulevard
Brownsville, Texas 78520
Telephone: (956) 504-1100
Facsimile: (956) 504-1408

Attorneys for Plaintiff,
RAQUEL O. RODRIGUEZ, as
legal guardian of JOSE L. RODRIGUEZ

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this ___ day of April, 2001, a true and correct copy of the foregoing document was served by first-class mail, postage prepaid, and addressed to; by fax transmission to; by overnight delivery to; or by personally delivering to or leaving with a person in charge of the office as indicated below:

Robert B. Summers                    [ ] U.S. Mail
ROBERT SUMMERS & ASSOCIATES          [ ] Facsimile
P. O. Box 398                        [ ] Overnight Delivery
Llano, Texas 78643                   [X] Messenger Delivery

_____
Rex Blackburn

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## BROWNSVILLE DIVISION

**RAQUEL O. RODRIGUEZ, as legal
guardian of JOSE L. RODRIGUEZ,**

        Plaintiffs,

vs.

**RIDDELL, INC.; and ALL AMERICAN
SPORTS CORPORATION, d/b/a
RIDDELL/ALL AMERICAN,**

        Defendants.

Case No. B-CV-96-177

## DECLARATION OF REX BLACKBURN

REX BLACKBURN, declares under penalty of perjury:

1.    I am an attorney duly authorized to practice before this Court pursuant to an Order of Admission *Pro Hac Vice*, and that I have been designated by the Court as attorney-in-charge relative to the above-captioned action.

2.    On or about February 26, 2001 I spoke by telephone with Defendants' lead counsel, Mr. Robert Summers, about dates for the parties to meet and discuss possible settlement and about the status of this case on remand.

3.    During this conversation, Mr. Summers informed me that the Defendants intended not to call at the retrial of this case certain experts that Defendants had called at the first trial,

DECLARATION OF REX BLACKBURN - 1

specifically, Mr. Summers said "[Dr.] McElhaney's gone" and so are Drs. Gennarelli and Thibault.

4.      Mr. Summers also told me in this conversation that the reason the experts would not be called, and Defendants would attempt to call new experts, was because Mr. Summer's "didn't like" the way they presented themselves at the first trial.

5.      I have informed Mr. Summers that Plaintiff vigorously objects to Defendants calling new experts.

FURTHER YOUR DECLARENT SAYETH NAUGHT.

REX BLACKBURN

DECLARATION OF REX BLACKBURN - 2

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this _26th_ day of April, 2001, a true and correct copy of the foregoing document was served by first-class mail, postage prepaid, and addressed to; by fax transmission to; by overnight delivery to; or by personally delivering to or leaving with a person in charge of the office as indicated below:

| | |
|---|---|
| Robert Summers | [ ] U.S. Mail |
| ROBERT B. SUMMERS & ASSOCIATES | [ ] Facsimile (915) 248-0110 |
| P.O. Box 398 | [ ] Overnight Delivery |
| Llano, TX 78643 | [x] Messenger Delivery |

Rex Blackburn

DECLARATION OF REX BLACKBURN - 3