IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

APR 2 8 2003

Michael N. Milby
Clerk of Court

RAQUEL O. RODRIGUEZ, as legal guardian
of JOSE L. RODRIGUEZ,

          Plaintiff,

vs.

RIDDELL, INC.; and ALL AMERICAN
SPORTS CORPORATION, d/b/a
RIDDELL/ALL AMERICAN,

          Defendants.

No. B-96-cv-177

**FILED UNDER SEAL**

## PETITION TO ENFORCE SETTLEMENT AGREEMENT

**COMES NOW** Roman "Dino" Esparza, guardian *ad litem* for Jose L. Rodriguez, and

Raquel O. Rodriguez, Legal Guardian of Jose L. Rodriguez, Plaintiffs, by and through their

attorneys of record Mark D. Kamitomo of The Markam Group, Inc., P.S.; Rex Blackburn of

Blackburn of Blackburn & Jones, LLP; and J. Arnold Aguilar of the Law Office of J. Arnold

Aguilar and move this Court for an Order directing National Accident Insurance Underwriters

(NAIU) intervener, to comply with the terms of the Settlement Agreement to which it stipulated

to on April 30, 2001, and to which this Court approved on June 19, 2001. In the alternative,

Plaintiffs move this Court for an Order setting aside the agreement with NAIU, and further, for

an Order directing NAIU to return the $280,000 Plaintiffs paid NAIU in settlement of its

subrogation interest plus a reasonable rate of interest on the $280,000. Finally, plaintiffs request

attorney fees and costs incurred in this matter.

This Petition is necessitated by NAIU's refusal to comply with the terms of the Settlement Agreement it entered into with Plaintiffs on April 30, 2001. Specifically, NAIU has refused to honor Jose L. Rodriguez's entitlement to medical benefits in the amount of approximately $100,000, and as such, has breached the settlement agreement and further caused the Plaintiffs undue hardship.

This Petition is made and based upon the pleadings and filings of record herein, Plaintiffs' Supporting Memorandum and the Affidavit of Plaintiffs' Counsel, Mark D. Kamitomo, with attachments, filed under seal concurrently herewith.

DATED this 25th day of April, 2003.

By_____
       Roman D. Esparza
       FSB No. 22703
       TSB No. 00795337
       ATTORNEY AD LITEM

DATED this 24 day of April, 2003.

By_____
       Mark D. Kamitomo, WSBA No. 18803
       Rex Blackburn, ISB No. 4608
       J. Arnold Aguilar, TSB No. 00936270
       ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing **PETITION TO ENFORCE SETTLEMENT AGREEMENT** has on this the 28th day of April, 2003, been forwarded to:

Mr. Mark T. Curry
MARK T. CURRY & ASSOCIATES
510 Bering, Suite 300
Houston, TX 77057


Mr. Rex Blackburn
BLACKBURN & BURNS, L.L.P.
1101 W. River Street, Suite 220
P.O. Box 7808
Boise, ID 83707


J. Arnold Aguilar

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

|  |  |
|---|---|
| RAQUEL O. RODRIGUEZ, as legal guardian of JOSE L. RODRIGUEZ,<br><br>        Plaintiff,<br><br>vs.<br><br>RIDDELL, INC.; and ALL AMERICAN SPORTS CORPORATION, d/b/a RIDDELL/ALL AMERICAN,<br><br>        Defendants. | No. B-96-cv-177<br><br>**FILED UNDER SEAL** |

## MEMORANDUM IN SUPPORT OF PETITION TO ENFORCE SETTLEMENT AGREEMENT

### I.     INTRODUCTION

In August 1995, 17 year old Jose Rodriguez suffered permanent and irreparable harm resulting from a traumatic brain injury he received during a football game. A lawsuit was filed on behalf of Mr. Rodriguez claiming that Riddell, the football helmet manufacturer, was negligent in its design of the helmet or more specifically the energy absorption padding within the helmet. Jose is now living the remainder of his life in a permanent vegetative state.

On April 9, 1999 a Federal Jury in Brownsville, Texas returned a verdict in favor of Jose Rodriguez and his mother Raquel Rodriguez in the amount of $11,450,000. Defendants appealed the verdict and the Fifth Circuit Court of Appeals reversed the judgment and remanded the matter for retrial. Before retrial occurred, the parties entered into settlement negotiations

which included National Accident Insurance Underwriters (NAIU) plaintiff's medical insurer who had intervened in the action to recover its subrogation interest.

On April 30, 2001 the parties and NAIU entered into a confidential settlement agreement which was approved by this Court on June 19, 2001. (Exhibit "A" p.6, ¶ D and Exhibits "B" and "E" to the Affidavit of Mark D. Kamitomo (Kamitomo Aff.).) With regard to NAIU, it agreed to continue to pay the $100,000 remaining on the $1,000,000 insurance policy until such time that the policy limit were exhausted. (Exhibit "A" p.6, ¶ D). In return, plaintiffs agreed to pay NAIU $280,000 to settle its subrogation claim.

Now, two years subsequent to the court approved Settlement Agreement, NAIU is refusing to continue its obligation to pay the $100,000 remaining benefits to Jose Rodriguez claiming that there is a five year limitation period for payment under the policy that has expired. (Kamitomo Aff.)

Despite numerous conversations with Mark Curry, the attorney who represented NAIU at the time of settlement and with Ben Gow the claims adjuster NAIU who terminated the Settlement Agreement, plaintiffs have been unable to secure an agreement by NAIU to continue payment of the $100,000 it agreed to. (Kamitomo Aff.)

Consequently, plaintiffs have filed this Motion and are requesting that this Court enter an order requiring NAIU to fulfill its obligations under the Settlement Agreement by continuing to pay the remaining $100,000 policy limits until exhausted. In the alternative, plaintiffs request that this Court set aside the Agreement as to NAIU and require NAIU to reimburse plaintiffs in the amount of $280,000 plus interest. Finally, plaintiffs are requesting attorney fees and costs incurred in having to file this Petition.

## II.    ARGUMENT: NATIONAL ACCIDENT AGREED TO BE BOUND BY THE TERMS OF THE SETTLEMENT AGREEMENT, WHICH THIS COURT APPROVED, AND NATIONAL ACCIDENT SHOULD NOT BE RELEASED FROM ITS OBLIGATIONS

NAIU's argument that its obligation to pay the $100,000 remaining due to an expiration of an alleged five year period of coverage within the policy is without merit.  First, it is undisputed that the five year limitation period if it exists was not part of the discussion between the parties at the time settlement was entered into.  Specifically, Mark Curry the attorney who represented NAIU has expressly acknowledged that he was unaware of any limitation period and thus it would not have been part of the bargaining process between NAIU and plaintiffs.  (Exhibit "C" to Kamitomo Aff.).  As such there could have been no meeting of the minds on this issue and thus clearly not a part of the Settlement Agreement entered into.

Second, the express language set forth in the Petition for Approval of Settlement and the letter from Mark Curry dated June 18, 2001 outlining the terms of NAIU's settlement specifically constitute a waiver of any five year limitation period if indeed one exists.  In particular, subsection D entitled "Intervenors Claims" set forth in the Petition for Approval of Settlement specifies as follows:

> ### D.    Intervenor's Claims
>
> To date, the Intervenor has paid, pursuant to a policy of medical insurance, approximately $900,000 in medical benefits for treatment of injuries suffered during Jose Rodriguez's August 24, 1995, football game.  **The Intervenor has agreed to accept $280,000 out of the settlement to satisfy in its entirety its surrogate interest and any claim for attorney fees, litigation expenses or any other claims arising from the settlement. Additionally, the Intervenor will continue to pay medical benefits under the terms of Intervenor's insurance policy until the limits of that policy ($1,000,000 less amounts paid to date) are exhausted.**  A true and correct copy of the written memorialization of the agreement between Intervenor and Plaintiff is attached hereto as Exhibit "J".

MEMORANDUM IN SUPPORT OF PLAINTIFF'S PETITION TO
ENFORCE SETTLEMENT AGREEMENT – 3

(Exhibit "A" to Kamitomo Aff., p. 1 and respective Exhibit "J" thereto; emphasis added.)[1]

Notably, there is no reference to any limitation period or any other contingency with regard to NAIU's obligation to pay the remaining $100,000. The clear and unequoical language specifies that NAIU's obligation to pay will continue until such time that the remaining policy limits are exhausted.

Finally, if there is a five year limitation period as argued by NAIU, then it would have expired prior to the time NAIU entered into the Settlement Agreement with plaintiffs. Specifically, Jose Rodriguez was injured on August 25, 1995. NAIU's obligation to pay medical benefits started on that date. The settlement agreement was not reached until April 30, 2001 which is approximately six years after Mr. Rodriguez was injured. Consequently, there can be no legitimate claim by NAIU that it had an alleged five year limitation period in mind at the time it entered in to the Settlement Agreement with plaintiffs.

The fact that NAIU is now claiming that **"Jose's policy was terminated . . . August 24, 2000"** and that **"money was no longer available to provide for Jose's needs"** undermines the entire Settlement Agreement. NAIU's promise to pay remaining medical benefits is a material term to the Settlement Agreement, which when the parties entered into the agreement, and this Court Approved the agreement, was undoubtedly relied upon as being truthful. Under these circumstances, either NAIU's behavior now evidences bad faith and fraud, or at the time of settlement, NAIU made the choice through counsel to voluntarily waive the alleged "maximum period of five years" and focus only on what was left of the $1,000,000 policy in the amount of $100,000.

---

[1] Exhibit "J" to the Settlement Agreement is a copy of a letter drafted by Mark T. Curry, attorney for National Accident, on June 18, 2001, wherein the terms memorialized in the Settlement Agreement were confirmed and agreed to.

MEMORANDUM IN SUPPORT OF PLAINTIFF'S PETITION TO
ENFORCE SETTLEMENT AGREEMENT – 4

The terms of the Settlement Agreement with NAIU are clear. A purported "maximum period" of time for paying out benefits was neither contemplated nor established as part of the settlement and thus, was not memorialized in the agreement. The only limitation of the policy expressly referenced is a dollar amount, which was estimated to be a remaining $100,000.

The inequity created by NAIU's refusal to pay Jose his remaining benefits is appalling. NAIU received its settlement award – $280,000 directly from the settlement proceeds – and now refuses to fulfill its promise in exchange.

It was pursuant, among other things, to the terms of NAIU's agreement with plaintiffs that this Court recognized in tis Order the settlement to be "in all particulars just, reasonable, equitable and in the best interest of Jose L Rodriguez, an incompetent, and all parties to this action." (Exhibit "B" to Kamitomo Aff., p.1, ¶ 1.) Moreover, upon incorporating the terms of the Settlement Agreement into its Order Approving Settlement, **the Court further decreed that the terms of settlement "shall be binding upon and inure to the benefit of the parties thereto."** (Exhibit B to Kamitomo Aff., at p.2, ¶ 3; emphasis added.)

It is pursuant to this Court's Order and respective findings, that Jose L. Rodriguez, by and through his guardian *ad litem*, Legal Guardian, and attorneys of record, now seeks this Court's intervention to enforce NAIU's promise to provide remaining medical benefits to a young man who has been reduced to a permanent vegetative state.

## III.    CONCLUSION

For the foregoing reasons, the Plaintiff, Jose L. Rodriguez, by and through his guardian *ad litem*, Legal Guardian, and attorneys of record respectfully requests this Court to grant Plaintiff's Petition to Enforce the Settlement Agreement in its entirety or in the alternative set aside the Settlement Agreement with NAIU and order NAIU to refund payment to plaintiffs in

the amount of $280,000.00 plus interest.  Further, plaintiffs request that this Court award plaintiffs reasonable attorney fees and costs incurred in this matter.

DATED this 25th day of April, 2003.

By_____ .

        Roman D. Esparza
        FSB No.  22703
        TSB No.  00795337
        ATTORNEY AD LITEM

DATED this 24 day of April, 2003.

By_____

        Mark D. Kamitomo, WSBA No. 18803
        Rex Blackburn, ISB No. 4608
        J. Arnold Aguilar, TSB No. 00936270
        ATTORNEYS FOR PLAINTIFF

MEMORANDUM IN SUPPORT OF PLAINTIFF'S PETITION TO
ENFORCE SETTLEMENT AGREEMENT – 6

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing **MEMORANDUM IN SUPPORT OF PETITION TO ENFORCE SETTLEMENT AGREEMENT** has on this the 28th day of April, 2003, been forwarded to:

Mr. Mark T. Curry
MARK T. CURRY & ASSOCIATES
510 Bering, Suite 300
Houston, TX 77057


Mr. Rex Blackburn
BLACKBURN & BURNS, L.L.P.
1101 W. River Street, Suite 220
P.O. Box 7808
Boise, ID 83707

J. Arnold Aguilar

MEMORANDUM IN SUPPORT OF PLAINTIFF'S PETITION TO
ENFORCE SETTLEMENT AGREEMENT - 7

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | |
|---|---|
| RAQUEL O. RODRIGUEZ, as legal guardian of JOSE L. RODRIGUEZ,<br><br>Plaintiff,<br><br>vs.<br><br>RIDDELL, INC.; and ALL AMERICAN SPORTS CORPORATION, d/b/a RIDDELL/ALL AMERICAN,<br><br>Defendants. | No. B-96-cv-177<br><br>**FILED UNDER SEAL** |

## <u>AFFIDAVIT OF MARK D. KAMITOMO</u>

STATE OF WASHINGTON )
                      :ss.
County of Spokane      )

       MARK D. KAMITOMO, being first duly sworn upon oath, deposes and says:

       1.     I am one of the attorneys of record for the Plaintiff, Jose Rodriguez, and was admitted Pro Hac Vice to practice before this Court in this matter. The facts set forth in this Affidavit are within my personal knowledge.

       2.     On April 30, 2001, Plaintiffs entered into a settlement agreement with Defendants and National Accident Insurance Underwriters (NAIU), the insurance company that paid for Jose Rodriguez's medical care. Attached hereto, as **Exhibit A**, is a true and correct copy of the Petition for Settlement with Exhibit J, which incorporates the terms of the settlement agreement, as well as the Court's Order approving settlement attached hereto as **Exhibit B**.

       3.     As part of the agreement with NAIU, Plaintiffs paid NAIU $280,000 in settlement

AFFIDAVIT OF MARK D. KAMITOMO – 1

of its subrogation interest. In return, NAIU agreed to continue to pay medical benefits under the terms of the intervener's insurance policy until the limits of that policy in the amount of $1 million were exhausted. The amount left at the time of the agreement was approximately $100,000.

4.    Subsequent to entry of the agreement and approval by this Court, NAIU began honoring its obligation and paid medical benefits to Jose Rodriguez.

5.    In later February, early March 2003, the Rodriguez family contacted Medical Rehabilitation Consultants (MRC), NAIU's agent who administers Jose's medical benefits policy to inquire about having Jose's special needs mattress repaired.

6.    By letter dated March 6, 2003, MRC/NAIU stated it would not pay for the requested repairs because NAIU was terminating Jose's medical benefits policy on August 24, 2000, pursuant to a five year limitation. Attached hereto as **Exhibit C** is a true and correct copy of MRC's/NAIU's March 6, 2003, correspondence.

7.    Subsequently, on or about February 28, 2003, I contacted Mark Curry who was the attorney that represented NAIU in the settlement negotiations. Several conversations ensued wherein Mr. Curry was provided with a copy of the settlement agreement so he could refresh his memory on the terms. After several conversations and e-mails, Mr. Curry had me contact Ben Gow at NAIU who informed me that he was taking the position that the agreement had expired due to the five year limitation. In a subsequent e-mail with Mark Curry, Mr. Curry conceded that at the time of settlement he was not aware that the policy was subject to a five year expiration provision. **Exhibit D**.

8.    NAIU's refusal to pay the remaining $100,000 in medical benefits is directly contrary and in breach of the settlement agreement the parties entered into on April 30, 2001, and

AFFIDAVIT OF MARK D. KAMITOMO – 2

that this Court approved on June 19, 2001.  Attached hereto, as **Exhibit E**, is a true and correct copy

of the settlement agreement with its exhibits.

_____
MARK D. KAMITOMO

SUBSCRIBED AND SWORN to before me this 24th day of April, 2003.

_____
NOTARY PUBLIC in and for the State of Washington,
residing at Spokane. My Commission Expires: _12-9-05_

AFFIDAVIT OF MARK D. KAMITOMO – 3

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

**JUN 1 9** 2001

Michael N. Milby
Clerk of Court

RAQUEL O. RODRIGUEZ, as legal guardian
of JOSE L. RODRIGUEZ,

                    Plaintiff,

vs.

RIDDELL, INC.; and ALL AMERICAN
SPORTS CORPORATION, d/b/a
RIDDELL/ALL AMERICAN,

                    Defendants.

Case No. B-96-cv-177

**FILED UNDER SEAL**

## PETITION FOR APPROVAL OF SETTLEMENT

**COME NOW** the Petitioners, JOSE L. RODRIGUEZ ("Plaintiff"), by and through

RAQUEL O. RODRIGUEZ, as legal guardian of Plaintiff, and ROMAN D. ESPARZA, court-

appointed Attorney ad Litem, and pursuant to the Court's equitable powers and *Hoffert v. General*

*Motors Corp.*, 656 F.2d 161 (5th Cir. 1981), move this Court for an Order approving the settlement

of the above-captioned case.

### I.    TERMS OF SETTLEMENT

On April 30, 2001, the Plaintiff, the Intervenor, National Accident Insurance Underwriters

("Intervenor"), and the Defendants, Riddell Sports, Inc., Riddell, Inc., and All American Sports

Corporation, d/b/a Riddell/All American (collectively "Riddell"), reached an agreement settling this

action on the following terms:

PETITION FOR APPROVAL OF SETTLEMENT – 1

TRUE COPY I CERTIFY
ATTEST:
MICHAEL N. MILBY, CLERK
By_____
                    Deputy Clerk

1.      Riddell (through its insurers) will pay to Plaintiff and Intervenor settlement proceeds with a total present value of $5,000,000.

2.      From the settlement proceeds, Riddell will purchase an annuity at a cost of $1,282,596, under which future monthly periodic payments will be made to the Trustee of the Jose L. Rodriguez Trust ("Rodriguez Trust")[1] equal to $125,000 annually. Monthly payments of $10,416.66 will begin on September 3, 2001, and continue for the life of Jose L. Rodriguez or for 15 years, whichever is longer. The minimum guaranteed payout of this annuity to the Rodriguez Trust (or in the event of his death within 15 years, to the Estate of Jose L. Rodriguez) is $1,875,000. In the event Jose L. Rodriguez lives more than 15 years, the annuity shall pay benefits to the Rodriguez Trust for the remainder of his life.

3.      The balance of the settlement proceeds, after deduction of attorney fees, litigation expenses and liens, shall be paid to the Rodriguez Trust.

4.      Plaintiff and Intervenor will execute a full and final release of all claims, hold harmless and indemnity agreement releasing Riddell.[2]

5.      Plaintiff and Intervenor agree to a Take Nothing Final Judgment of Dismissal with Prejudice, the parties to pay their own fees and costs.

---

[1]  Contemporaneously herewith, Plaintiff has filed an Application to Establish the Jose L. Rodriguez Trust. The trust is a "special needs trust", the principal purpose of which is to provide a "system for management, investment, and disbursement of the settlement proceeds for the benefit of" Jose L. Rodriguez, and the secondary purpose of which is to "provide for the continuing conservation and enhancement of the settlement proceeds to supplement all other financial and service benefits to which [Jose L. Rodriguez] might be eligible as a result of his disability from any local, county, state or federal agency, or through any public or private profit or non-profit corporations or agencies."

[2]  A copy of the Full and Final Compromise Settlement, Release and Indemnity Agreement reflecting the terms of settlement and which will be signed upon the Court's approval of the settlement is attached hereto as Exhibit A.

PETITION FOR APPROVAL OF SETTLEMENT – 2

6.     Riddell agrees to pay all unpaid Attorney ad Litem fees.

7.     Plaintiff and Intervenor agree that all liens, including Medicare, Medicaid, government and hospital, insurance subrogation, medical bills, attorney fees and expenses, shall be paid and discharged out of the aforementioned settlement amount.

8.     Funding of the settlement shall occur on August 3, 2001, by delivery via Federal Express courier, of checks to (i) "The Markam Group, Inc., P.S., IOLTA Trust Account" of $3,717,404; and (ii) Allstate Life insurance Company of $1,282,596.

9.     The financial terms of the settlement are confidential.

## II.    DISTRIBUTION OF SETTLEMENT PROCEEDS

The proceeds of the $5,000,000 settlement shall be distributed as set forth below:

**A.    <u>Attorney Fees</u>**

On March 9, 1996, Plaintiff's counsel, Mark D. Kamitomo, entered into a Contingent Fee Agreement ("Fee Agreement") with Raquel O. Rodriguez to represent Jose L. Rodriguez in the above-entitled matter.  Raquel O. Rodriguez was appointed permanent guardian of Jose L. Rodriguez on March 19, 1999, by the County Court at Law No. 3, Cameron County, Texas.[3]  The Cameron County Court ratified the Fee Agreement on or about March 19, 1999.  True and correct copies of the Fee Agreement, the Order Appointing Permanent Guardian, and the Order Ratifying Attorney's Contingent Fee Agreement are attached hereto as Exhibits C, D and E, respectively.  Pursuant to the

---

[3] The March 19, 1999 Order appointed Raquel O. Rodriguez as guardian of both the estate and the person of Jose L. Rodriguez.  On June 14, 2001, Mrs. Rodriguez filed with the County Court an Application for Closing and Terminating the Guardianship of the Estate of Jose L. Rodriguez.  On the same date (June 14, 2001), the County Court entered an Order Closing and Terminating Guardianship of the Estate of Jose L. Rodriguez.  (A true and correct copy of said Order is attached hereto as Exhibit B.)  Although Mrs. Rodriguez shall remain guardian of the person of Jose L. Rodriguez, the administration of his financial assets will be assumed by the Trustee of the Rodriguez Trust, the Texas State Bank.

PETITION FOR APPROVAL OF SETTLEMENT – 3

Fee Agreement, Plaintiff agreed to pay Mr. Kamitomo 40% of the total amount recovered by settlement or judgment after filing of a lawsuit.

Shortly after March 9, 1996, Mr. Kamitomo entered into an agreement with Wyatt & Wyatt, P.C. ("Wyatt"), to serve as co-counsel subject to the terms of the Fee Agreement. Wyatt's services were subsequently terminated by Plaintiff. Mr. Kamitomo then entered into separate agreements with Evans, Keane LLP and J. Arnold Aguilar to serve as co-counsel, under which the attorney fee set forth in the Fee Agreement would be shared on an agreed-upon percentage basis. Wyatt instituted a separate lawsuit against Mr. Kamitomo and his law firm seeking recovery of fees arising under the Fee Agreement. (*Wyatt & Wyatt, P.C. v. The Markam Group, Inc., P.S., et al.*, United States District Court, Southern District of Texas, Corpus Christi Division, Case No. C-99-199; "Wyatt suit".) Additionally, Wyatt claims entitlement to reimbursement of certain expenses which were advanced on behalf of the Plaintiff prior to the termination of its legal representation by Plaintiff. Wyatt has been ordered by this Court to appear at the Friendly Suit hearing on this Petition, to demonstrate its entitlement to reimbursement of expenses and fees from the settlement.

On June 18, 2001, the parties to the Wyatt suit reached a full and final settlement of all claims which were, or could have been, brought in said action. Incident thereto, and in exchange for payment by the Defendants therein, of a specified sum of money, Wyatt & Wyatt, P.C., has completely settled and forever relinquished any claims for attorney fees arising from its representation of Raquel O. or Jose L. Rodriguez. Also on June 18, 2001, Wyatt provided the Attorney ad Litem, Mr. Esparza, an itemization of expenses it advanced incident to its representation of Raquel O. and Jose L. Rodriguez.

Subject to this Court's approval, and pursuant to the Fee Agreement, attorney fees totaling $2,000,000 will be paid from the settlement proceeds.

PETITION FOR APPROVAL OF SETTLEMENT – 4

## B.    Litigation Related Expenses

Pursuant to the Fee Agreement, the following expenses are to be deducted from the settlement:

| | |
|---|---:|
| Mark D. Kamitomo/The Markam Group, Inc., P.S. | $268,422.43 |
| Evans, Keane LLP | 181,565.88 |
| J. Arnold Aguilar | 13,341.16 |
| Wyatt & Wyatt, P.C. | 6,000.00 |
| TOTAL | $469,329.47 |

A true and correct copy of each specified firm's itemization of expenses which were actually and necessarily incurred or advanced by counsel in the prosecution of this matter are attached hereto as Exhibits F, G, H and I.

The Attorney ad Litem has reviewed these expenses, has determined that they were necessarily and actually incurred or advanced by counsel in the prosecution of this matter, and requests that the Court approve reimbursement to counsel of same from the settlement proceeds.

## C.    Medicaid

The Texas Health and Human Services Commission, State Medicaid Director, has represented that it has paid approximately $150,000 (exclusive of prescription drug costs, which have yet to be determined by the Texas Health and Human Services Commission) in Medicaid benefits on behalf of Jose L. Rodriguez, for which it asserts a lien. Petitioners estimate that the Medicaid lien will total approximately $200,000. The Texas Health and Human Services Commission has agreed to reduce its lien by at least 15%. Petitioners request that the Court authorize counsel for Plaintiff to negotiate and settle the Medicaid lien. The total Medicaid lien is not expected to exceed $200,000.

PETITION FOR APPROVAL OF SETTLEMENT – 5

**D.    Intervenor's Claims**

To date, the Intervenor has paid, pursuant to a policy of medical insurance, approximately $900,000 in medical benefits for treatment of injuries suffered during Jose Rodriguez's August 24, 1995, football game. The Intervenor has agreed to accept $280,000 out of the settlement to satisfy in its entirety its subrogated interest and any claim for attorney fees, litigation expenses or any other claims arising from the settlement. Additionally, the Intervenor will continue to pay medical benefits under the terms of Intervenor's insurance policy until the limits of that policy ($1,000,000 less amounts paid to date) are exhausted. A true and correct copy of the written memorialization of the agreement between Intervenor and Plaintiff is attached hereto as Exhibit "J".

**E.    Annuity**

Riddell will purchase an annuity from Allstate Life Insurance Company (rated A+XV by A.M. Best Company and AA+ by Standard and Poor's), costing $1,282,596, with benefits payable to the Trustee of the Rodriguez Trust. Pursuant to the terms of the annuity, the Trustee will receive payments of $125,000 annually, in monthly installments of $10,416.66, payable on the third day of each month beginning on September 3, 2001. The monthly payments are guaranteed for 15 years or for the life of Jose L. Rodriguez, whichever is longer. Upon the death of Jose L. Rodriguez, the remaining guaranteed payments shall be made to the Estate of Jose L. Rodriguez.

**F.    Net Settlement Proceeds**

The proceeds of the settlement after deduction of attorney fees, litigation-related expenses, Medicaid liens, Intervenor's subrogated interest, and the cost of the annuity, will be paid to the Trustee of the Rodriguez Trust.

**WHEREFORE**, Petitioners respectfully request that the Court approve the settlement, and authorize the following distributions pursuant thereto:

PETITION FOR APPROVAL OF SETTLEMENT – 6

| | |
|---|---|
| Attorney Fees | $2,000,000.00 |
| Litigation-Related Expenses | 469,329.47 |
| Medicaid Lien | 200,000.00 (estimated) |
| Intervenor's Subrogated Interest | 280,000.00 |
| Annuity Costs | 1,282,596.00 |
| | |
| Net to Jose L. Rodriguez Trust at the time of settlement | $768,074.60 (estimated) |

**DATED** this ___19ᵗʰ___ day of June, 2001.

By _____
Roman D. Esparza,
FSB No. 22703
TSB No. 00795337
ATTORNEY AD LITEM

**DATED** this ___19ᵗʰ___ day of June, 2001.

By _____
Rex Blackburn, ISB No. 3177
Paul J. Augustine, ISB No. 4608
Mark D. Kamitomo, WSB No. 18803
J. Arnold Aguilar, TSB No. 00936270
ATTORNEYS FOR PLAINTIFF

PETITION FOR APPROVAL OF SETTLEMENT – 7

T-454  P.02/03  F-209

# HUGHES, WATTERS & ASKANASE, L.L.P.

ATTORNEYS AT LAW

1415 LOUISIANA, 37TH FLOOR

HOUSTON, TEXAS 77002-7594

TELEPHONE (713) 259-0688

TELECOPIER (713) 759-8834

MARK T CURRY
PARTNER

E-mail: mcurry@hwallp.com
Direct Dial: 713-328-2808

June 18, 2001

Mr. Rex Blackburn                                                    **Via Telecopier**
Evans, Keene, L.L.P.
1101 West River Street – Suite 200
Boise, Idaho 83701-0959

Mr. Mark D. Kamitomo                                                 **Via Telecopier**
The Markam Group, Inc.
421 West Riverside, Suite 1060
Spokane, WA 99201

Roman D. Esparza                                                     **Via Telecopier**
Rentfro, Faulk & Blakemore, L.L.P.
185 E. Ruben M. Torres, Sr. Blvd.
Brownsville, Texas 78520-9136

J. Arnold Aguilar                                                    **Via Telecopier**
Law Office of J. Arnold Aguilar
Artemis Square, Suite H-2
1200 Central Blvd.
Brownsville, Texas 78520

Re:  No. 99-40680; In the United States Court of Appeals for the Fifth Circuit; *Raquel O. Rodriguez and Jose L. Rodriguez, Plaintiffs-Appellees vs. Riddell Sports, Inc., et al, Defendants-Appellants*

Dear Gentlemen:

This letter will confirm the resolution of National Accident's subrogation claim. In connection with Jose Rodriguez's settlement with the Riddell defendants, National Accident Insurance Underwriters, Inc. will receive a net recovery of $280,000.00 in satisfaction of its subrogation claim. National Accident's subrogation recovery will not be subject to any claim for attorney's fees, costs or expenses made by Jose Rodriguez and/or his attorneys. National Accident will continue to pay medical benefits on behalf of Jose Rodriguez pursuant to the terms of the applicable insurance policy until such time that the policy limits are exhausted.

409172-1 CNA-0370

EXHIBIT J

# HUGHES, WATTERS & ASKANASE, L.L.P.
### ATTORNEYS AT LAW

All Counsel
June 18, 2001
Page 2

    If this letter accurately reflects our agreement, I would appreciate you evidencing such by signing below.

                        Very truly yours,

                        Mark T. Curry
                        Attorney for Intervenor,
                        National Accident Insurance
                          Underwriters, Inc.

MTC:pkk

**AGREED:**

Rex Blackburn
Counsel for Plaintiffs

Roman D. Esparza
Attorney Ad Litem for
 Jose L. Rodriguez

**AGREED:**

Mark D. Kamitomo
Counsel for Plaintiffs

J. Arnold Aguilar
Counsel for Plaintiffs

# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

**JUN 1 9 2001**

Michael N. Milby
Clerk of Court

RAQUEL O. RODRIGUEZ, as legal guardian
of JOSE L. RODRIGUEZ,

                    Plaintiff,

vs.

RIDDELL, INC.; and ALL AMERICAN
SPORTS CORPORATION, d/b/a
RIDDELL/ALL AMERICAN,

                    Defendants.

Case No. B-96-cv-177

**FILED UNDER SEAL**

## ORDER APPROVING SETTLEMENT

On the 19th day of June, 2001, this cause came for hearing on the Petition for Approval of
Settlement, filed by Petitioners on June 19, 2001.

After hearing the evidence in support of the Petition and the argument of counsel, and the
Court being fully advised in the premises, the Petition is GRANTED.

**IT IS THEREFORE ORDERED, ADJUDGED AND DECREED** as follows:

1.        The Court finds that the settlement is in all particulars just, reasonable, equitable and
in the best interests of Jose L. Rodriguez, an incompetent, and all parties to this action.

2.        Contemporaneously herewith, the Court has considered the Application to Establish
the Jose L. Rodriguez Trust ("Rodriguez Trust") and, good cause existing therefor, has entered this
date the Decree of Court Establishing the Jose L. Rodriguez Trust.

ORDER APPROVING SETTLEMENT – 1

3.      The parties to the Full and Final Compromise Settlement, Release and Indemnity Agreement ("Settlement Agreement"; Exhibit A to Petition for Approval of Settlement) are forthwith authorized and directed to execute same.  The terms of the Settlement Agreement are incorporated herein and shall be binding upon and inure to the benefit of the parties thereto.

4.      On or before August 3, 2001, the Defendants and their Insurer, Illinois National Insurance Company, shall pay the total present-value sum of $5,000,000 as follows:

(i)      overnight delivery, by Federal Express courier, of a check payable to "The Markam Group, Inc., P.S., IOLTA Trust Account" in the amount of $3,717,404; and

(ii)     overnight delivery, by Federal Express courier, of a check payable to Allstate Life Insurance Company in the amount of $1,282,596 for the purchase of an annuity policy from Allstate Life Insurance Company, the owner of which, Allstate Assignment Company, shall make periodic payments according to the schedule specified in the Settlement Agreement.

5.      The Markam Group, Inc., P.S., and Mark Kamitomo are hereby authorized and directed, upon receipt of the monies specified in the preceding paragraph, to forthwith distribute said funds as follows:

(i)      to The Markam Group, Inc., P.S., Evans, Keane LLP, J. Arnold Aguilar, and Wyatt & Wyatt, P.C., the total sum of $2,000,000, according to the agreements of said counsel for the distribution of attorney fees;

(ii)     to the following counsel for Plaintiff, as reimbursement for litigation expenses necessarily and actually incurred or advanced by said counsel in the prosecution of this matter, the following amounts:

ORDER APPROVING SETTLEMENT – 2

| | |
|---|---:|
| Mark D. Kamitomo/The Markam Group, Inc., P.S. | $268,422.43 |
| Evans, Keane LLP | 181,565.88 |
| J. Arnold Aguilar | 13,341.16 |
| Wyatt & Wyatt, P.C. | 6,000.00 |

TOTAL     $469,329.47

(iii)    to National Accident Insurance Underwriters, in satisfaction in its entirety of its subrogated interest and any claim for attorney fees, litigation expenses or any other claims arising from the settlement, the sum of $280,000;

(iv)    to the Texas Health and Human Services Commission, State Medicaid Director, such sums as are necessary to negotiate and settle its lien arising from the payment of Medicaid benefits on behalf of Jose L. Rodriguez;

(v)    to the Rodriguez Trust, such sums as remain after payment of the foregoing.

6.    Defendants and their Insurer, Illinois National Insurance Company, shall pay all reasonable fees and expenses of the Attorney ad Litem, Roman D. Esparza, which are unpaid as of the date of this Order.

7.    The financial terms of this settlement, by agreement of the parties, are to remain confidential, and this Order is filed under seal.

**DATED** this _19th_ day of June, 2001.

FILEMON B. VELA
U.S. DISTRICT JUDGE

ORDER APPROVING SETTLEMENT – 3

# EXHIBIT C



**Medical Rehabilitation Consultants**

111 W. Colorado, Suite 200
Spokane, WA 99201-3203

509-328-9700
Fax 509-328-9777

www.medrehabconsultants.com

March 6, 2003

Juan Rodriguez
201 Limon Drive
San Benito, TX 78586

RE:   Client: RODRIGUEZ, Jose
      SSN:   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
      DOB:   06/07/77
      DOI:   08/24/95

Dear Juan:

Carmen called MRC one day last week while I was gone. She had some questions regarding getting the Pegasus mattress repaired and wanting the money to come from the BPI/NAIU benefits for those repairs. She was informed that the BPI/NAIU policy had expired, was no longer in effect, and therefore, money was no longer available to provide for Jose's needs.

I do not know if you or your family still have a copy of Jose's policy so I am enclosing one for you. Please note on the cover sheet, *Section I (2) Policy Period,* "Effective Date: August 1, 1995 and expiration date: Until Terminated." Then note (blue tabbed page) *Section III, Benefit Period,* "Benefits will terminate on the date we have paid the Maximum Benefit, subject to a maximum period of five years." Jose's policy was terminated by BPI August 24, 2000.

Hopefully, this will explain the answers to questions you may have. However, if you still have questions, please call Karin Evans at BPI, 800-460-5778, extension 2480, and she will be happy to help you. MRC works with medical issues only and does not have anything to do with policy issues.

I wish Jose and all your family the best as it was an honor to meet you and to be of service to you. It is unfortunate that your policy ended and MRC had to close your file as I would have enjoyed being of assistance long into the future. Express my greetings to your mother.

Sincerely,

Mary M. Glidden /sm

Mary M. Glidden, RN, BSN,
CCM, CLCP, CRRN, D-ABDA
Nurse Consultant

MMG/sm

Enclosure: NAIU policy

cc: Karin Evans, V.P., BPI (w/o enclosure)
    Ben Gow, V.P., NAUl (w/o enclosure)

19572003.000

# EXHIBIT D

MSN Hotmail - Message



MSN Home  |  My MSN  |  Hotmail  |  Search  |  Shopping  |  Money  |  People & Chat



**Hotmail**    Home    Inbox    Compose    Contacts    Options    Help

markamgrp@hotmail.com                    Free Newsletters | MSN Featured Offers | Find Message

[ Save Address(es) ]  [ Block ]                              • **Previous  Next | Close**

| | |
|---|---|
| **From :** | "mcurry" <mcurry@mtcurry.com> |
| **To :** | "'Mark Kamitomo'" <markamgrp@hotmail.com> |
| **Subject :** | RE: Jose Rodriquez v. Riddell. |
| **Date :** | Tue, 1 Apr 2003 13:49:58 -0600 |

[ Reply ]  [ Reply All ]  [ Forward ]  [ Delete ]  [ Put in Folder... ▾ ]        **Printer Friendly Version**

Mark,

Mark,

        My position has not changed.        As we discussed, pursuant to the
agreement, NAIU's obligation to pay future medical expenses was subject
to the terms of the insurance policy. My reason for adding this language
was to make sure that NAIU's obligation to pay future medical expenses
was not broadened beyond the terms of the policy, as I was not familiar
with all of the terms of the policy.

        Was I aware that the policy was subject to an expiration period
when we settled the case?  No. However, if the policy was limited by an
expiration period, or any other term, then such term governed.

        Mr. Gow's address is National Accident Insurance Underwriters,
85 West Algonquin Road, Arlington Heights, Illinois  60005.

Mark T. Curry

Mark T. Curry & Associates
Attorneys at Law
510 Bering, Suite 300
Houston, Texas 77057
713/789-4900
713/789-4922 - fax

# EXHIBIT E

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| RAQUEL O. RODRIGUEZ, as Legal | § | |
| Guardian of JOSE L. RODRIGUEZ, | § | |
| | § | CIVIL ACTION NO. B-CV-96-177 |
| Plaintiffs, | § | |
| | § | |
| vs. | § | |
| | § | |
| RIDDELL SPORTS, INC.; | § | |
| RIDDELL, INC.; and | § | |
| ALL AMERICAN SPORTS CORPORATION | § | |
| D/B/A RIDDELL/ALL AMERICAN, | § | |
| | § | |
| Defendants. | § | |

## FULL AND FINAL COMPROMISE SETTLEMENT, RELEASE AND INDEMNITY AGREEMENT

On or about the 24th day of August, 1995, Jose L. Rodriguez received injuries at Leo Aguilar Memorial Stadium in Los Fresnos, Cameron County, Texas.

Hereafter the term "accident" will mean and refer to this accident of August 24, 1995 and the injuries to Jose L. Rodriguez more fully described in the lawsuit set forth below.

The word "lawsuit" when used herein shall mean the lawsuit filed by Raquel O. Rodriguez and Jose L. Rodriguez vs. Riddell Sports, Inc., Riddell, Inc. and All American Sports Corporation d/b/a Riddell All American, Civil Action No. B-CV-96-177, In the United States District Court, Southern District of Texas, Brownsville Division. In the "lawsuit", the Plaintiffs sought damages as a result of the "accident" of August 24, 1995. An intervention was filed by National Accident Insurance

Page 1 of 18

Underwriters, Inc.  Following trial, a judgment was entered on April 9, 1999, for Plaintiffs and against Defendants.  Defendants appealed the judgment, and on February 14, 2001, the United States Court of Appeals for the Fifth Circuit issued a decision reversing the judgment, rendering judgment as a matter of law for Defendant Riddell Sports, Inc., and against Plaintiff Raquel O. Rodriguez in her individual capacity, and remanding the lawsuit for retrial of the claims of Jose L. Rodriguez (an incompetent, by and through his legal guardian, Raquel O. Rodriguez, and an attorney ad litem appointed by the United States District Court, Roman D. Esparza) and National Accident Underwriters, Inc., against Defendants Riddell, Inc., and All American Sports Corporation, d/b/a Riddell/All American.  The parties hereto stipulate and agree that as a result of the February 14, 2001, decision of the Court of Appeals, the claims of Raquel O. Rodriguez in her individual capacity against Defendants and all of them were and are forever barred, and that the claims of Jose L. Rodriguez and National Accident Underwriters, Inc., against Defendant Riddell Sports, Inc., were and are forever barred.

As used hereinafter, the term "Plaintiffs" shall refer to Jose L. Rodriguez (an incompetent, by and through his legal guardian, Raquel O. Rodriguez, and his attorney ad litem, Roman D. Esparza) and National Accident Underwriters, Inc.; the term "Defendants" shall refer to Riddell Sports, Inc., Riddell, Inc., and All American Sports Corporation, d/b/a Riddell/All American; and the term "Settlement Agreement" shall refer to this Full and Final Compromise Settlement, Release and Indemnity Agreement.

There are bona fide disputes as to the liability of the Defendants, and the damages of the Plaintiffs, if any, as a result of the "accident" and "the lawsuit."

Jose L. Rodriguez (by and through his legal guardian, Raquel O. Rodriguez, and his attorney ad litem, Roman D. Esparza), and National Accident Insurance Underwriters, Inc., and their heirs, executors, administrators, agents, servants, employees, legal representatives and assigns, are the "releasing parties."

Riddell Sports, Inc., Riddell, Inc. and All American Sports Corporation d/b/a Riddell/All American and all affiliated companies, including but not limited to its parent, subsidiaries, shareholders, officers, directors, agents, representatives, subcontractors, consultants and employees, Robert Summers, Ann H. Megee and Robert L. Guerra and any and all insurance carriers, including Illinois National Insurance Company, that may have coverage for any and all losses or damages whatsoever resulting from or attributed to the "accident" or the "lawsuit" are the "released parties."

On April 30, 2001, the "Releasing Parties" and the "Released Parties" participated in mediation and reached a settlement of the "lawsuit", subject only to court approval of the settlement and memorialization thereof in this Settlement Agreement.

In order to induce the payment of the monies paid under this **SETTLEMENT AGREEMENT**, Raquel O. Rodriguez, as the sole legal guardian of the person of Jose L. Rodriguez, Roman D. Esparza as the attorney ad litem, and the undersigned

representative of National Accident Insurance Underwriters, Inc. represent that they are fully competent to execute this document and do so with full authority.

In entering into this Settlement Agreement, the Plaintiffs represent that Plaintiffs have relied upon the advice of his/her/their attorneys, who are the attorneys of his/her/their own choice, concerning the legal and income tax consequences of this Settlement Agreement; that the terms of this Settlement Agreement have been completely read and explained to Plaintiffs by their attorneys; and that the terms of this Settlement Agreement are fully understood and voluntarily accepted by Plaintiffs.

FOR AND IN CONSIDERATION of the payment by Defendants and their insurer, Illinois National Insurance Company, to the "releasing parties" of the total present value sum of Five Million and no/100 Dollars ($5,000,000.00), which will be paid on or before August 3, 2001, as follows: (i) overnight delivery, by Federal Express courier, of a check payable to "The Markam Group, Inc., P.S., IOLTA Trust Account" in the amount of $3,717,404; and (ii) overnight delivery, by Federal Express courier, of a check payable to Allstate Life Insurance Company, in the amount of $1,282,596 for the purchase of an annuity policy from Allstate Life Insurance Company, the owner of which, Allstate Assignment Company, shall make periodic payments according to the schedule as follows (the "Periodic Payments"):

$10,416.66 payable on the 3rd of each month beginning 09/03/01. These payments are guaranteed for 15 years or for the life of Jose Luis Rodriguez, whichever is longer. The last guaranteed payment will be made on August 3, 2016.

Page 4 of 18

During the lifetime of Jose Luis Rodriguez, the payments will be made to the Trustee of the Jose L. Rodriguez Trust. Upon the death of Jose L. Rodriguez, the remaining guaranteed payments shall be made to the Estate of Jose Luis Rodriguez. (The Jose L. Rodriguez Trust and the Estate of Jose Luis Rodriguez are, for purposes of Periodic Payments, referred to herein as "Payees".)

All sums set forth herein constitute damages on account of personal injuries or sickness, within the meaning of Section 104(a)(2) of the Internal Revenue Code of 1986, as amended.

Plaintiff Jose L. Rodriguez (by and through his sole legal guardian, Raquel O. Rodriguez, and attorney ad litem, Roman D. Esparza) acknowledges that the Periodic Payments cannot be accelerated, deferred, increased or decreased by said Plaintiff or any Payee; nor shall said Plaintiff or any Payee have the power to sell, mortgage, encumber, or anticipate the Periodic Payments, or any part thereof, by assignment or otherwise.

Said Plaintiff acknowledges and agrees that the Defendants and/or their Insurer, Illinois National Insurance Company ("Insurer") will make a "qualified assignment", within the meaning of Section 130(c) of the Internal Revenue Code of 1986, as amended, of the Defendants' and/or their Insurer's liability to make the Periodic Payments set forth in Section 2.2 to ALLSTATE SETTLEMENT CORPORATION ("the Assignee"). The Assignee's obligation for payment of the Periodic Payments shall be no greater than that of Defendants and/or their Insurer (whether by

judgment or agreement) immediately preceding the assignment of the Periodic Payments obligation.

Any such assignment shall be accepted by said Plaintiff without right of rejection and shall completely release and discharge the Defendants and their Insurer from the Periodic Payments obligation assigned to the Assignee. Said Plaintiff recognizes that, in the event of such an assignment, the Assignee shall be the sole obligor with respect to the Periodic Payments obligation, and that all other releases with respect to the Periodic Payments obligation that pertain to the liability of the Defendants and their Insurer shall thereupon become final, irrevocable and absolute.

The Defendants and/or their Insurer, itself or through its Assignee, shall fund the liability to make the Periodic Payments through the purchase of an annuity policy from ALLSTATE LIFE INSURANCE COMPANY. The Defendants, their Insurer, or the Assignee shall be the sole owner of the annuity policy and shall have all rights of ownership. The Defendants, their Insurer, or the Assignee may have ALLSTATE LIFE INSURANCE COMPANY mail payments directly to the Payee(s). Said Plaintiff shall be responsible for maintaining a current mailing address for Payee(s) with ALLSTATE LIFE INSURANCE COMPANY.

The obligation of the Defendants, their Insurer and/or Assignee to make each Periodic Payment shall be discharged upon the mailing of a valid check in the amount of such payment to the designated address of the Payee(s) named in this Settlement Agreement.

Each party hereto shall bear all attorney's fees and costs arising from the actions of its own counsel in connection with the Complaint, this Settlement Agreement and the matters and documents referred to herein, the filing of a Dismissal of the Complaint, and all related matters; provided, however, that Defendants or their Insurer shall pay all unpaid reasonable fees and expenses of the Court Appointed Attorney ad Litem, Roman D. Esparza, incurred incident to the lawsuit.

Concurrently with the execution of this Settlement Agreement, counsel for the Plaintiffs shall deliver to counsel for the Defendants or counsel for their Insurer an executed Dismissal with Prejudice of the Complaint. Plaintiffs hereby authorize that upon delivery by Defendants or their Insurer of the funds referenced above to (i) The Markam Group, Inc., P. S., IOLTA Trust Account , and (ii) Allstate Life Insurance Company, counsel for the Defendants and/or counsel for their Insurer to file said Dismissal with the Court and enter it as a matter of record.

The "releasing parties", being of lawful age or otherwise legally competent and fully authorized to contract, do hereby release, acquit and forever discharge the "released parties", their employees, agents, successors and assigns and any and all other persons, firms, attorneys, subsidiaries, parent companies, affiliated companies, or corporations in privity with them, from any and all liability now accrued or hereafter to accrue on account of any and all claims or causes of action which the "releasing parties" now or may hereafter have for personal injuries, medical expenses, loss of services, loss of love, companionship, society,

pecuniary loss, mental anguish, medical expenses, or maintenance expenses, losses or damages, actual or punitive, of any and every kind or nature whatsoever, now known or that may hereafter develop, as a result of the "accident," more fully described in "the lawsuit." Without limiting the foregoing, the "releasing parties" hereby release, discharge, and acquit forever Riddell Sports, Inc., Riddell, Inc. and All American Sports Corporation d/b/a Riddell/All American and all affiliated companies, including but not limited to its parent, subsidiaries, shareholders, officers, directors, agents, representatives, subcontractors, consultants and employees and their heirs, executors, personal representatives, parent companies, subsidiaries, affiliated companies and assigns, from and against any and all claims for damages or other monetary recovery, known or unknown, which the "releasing parties" have or may have against Riddell Sports, Inc., Riddell, Inc. and All American Sports Corporation d/b/a Riddell/All American and all affiliated companies, including but not limited to its parent, subsidiaries, shareholders, officers, directors, agents, representatives, subcontractors, consultants and employees.

The "releasing parties" do hereby release, acquit and forever discharge all claims arising out of the "accident" or that could be brought under any or all policies of insurance issued to Riddell Sports, Inc., Riddell, Inc. and All American Sports Corporation d/b/a Riddell/All American and all affiliated companies, including but not limited to its parent, subsidiaries, shareholders, officers, directors, agents, representatives, subcontractors, consultants and employees by Illinois

National Insurance Company, or any other reinsurer or other insurance provider in effect or claimed to have been in effect on the date of the "accident"; as well as any and all extra-contractual or tort claims of any and every nature whatsoever, both statutory and at common law, arising out of or in any way connected with the transactions or dealings by and between the "released parties," their attorneys, agents, subagents, servants, employees, or adjusters, or in any way connected with the prosecution or adjustment of any and all claims arising out of the "accident," the insurance policies and the handling of the claims made by the "releasing parties" against the "released parties" and their insurance carriers and adjusters. The "releasing parties" hereby declare that they fully understand the terms of this settlement and voluntarily accept said sum for the purpose of making a full and final compromise, adjustment and settlement of the injuries and damages, expenses and inconvenience mentioned above. The "releasing parties" hereby acknowledge that they realize that by signing this release and accepting the sum of money set forth as consideration, they can never make any claim whatsoever against the "released parties" that in any way is directly or indirectly related to the "accident" and the insurance policies under which payment is made.

It is the express intent of the "releasing parties" that any and all causes of action, of whatever kind, nature or type arising out of or in any way connected with the "accident" that could be brought by, between or against any of the "released parties" be hereby released, acquitted and forever discharged, whether or not specifically set forth above.

It is further avowed that Jose L. Rodriguez has no children, either natural or adopted, legitimate or illegitimate. It is further avowed that Jose L. Rodriguez had no spouse, either through ceremonial marriage or at common law, at the time of the "accident". It is further represented that Raquel O. Rodriguez is the sole legal guardian of the person of Jose L. Rodriguez.

It is further agreed and understood that this settlement is a compromise of a disputed claim, and that the payment made is not to be construed as an admission on the part of the parties hereby released of any liability whatsoever, as a consequence of said "accident", said alleged liability being expressly denied.

## CONFIDENTIALITY PROVISION

The Settlement Agreement is intended to compromise and settle disputed claims, and the "released parties" would be irreparably harmed by the disclosure of the amount of consideration paid to the "releasing parties" pursuant to this Settlement Agreement. The "releasing parties" hereby covenant and agree that the amount of consideration paid to the "releasing parties" pursuant to this Settlement Agreement **shall be forever retained in strict confidence except as specifically authorized under this Agreement.** The "releasing parties" will not disclose the amount of consideration paid to the "releasing parties" pursuant to this Settlement Agreement to any individual, person, non-governmental business and/or entity or governmental entity (except as specifically required by law or court order) without first having obtained the express written authorization for such disclosure from the "released parties"; provided, however, that the "releasing

parties" may disclose the amount of consideration paid to the "releasing parties" pursuant to this Settlement Agreement to such legal, financial, accounting or other professionals as are reasonably necessary to effectuate the terms of this Settlement Agreement or to administer the Jose L. Rodriguez Trust.

The "releasing parties" hereby acknowledge and agree that the confidentiality provisions set forth in the preceding paragraph are reasonable and necessary for the protection of the legitimate business interests of the "released parties". Because the damages to the "released parties" which would be caused by breach of the confidentiality provisions would be incapable of accurate determination, the Plaintiffs acknowledge and agree that in the event of a breach by either Plaintiff of the confidentiality provisions set forth in the preceding paragraph, the "released parties" shall be entitled to liquidated damages from the breaching party in the amount of $50,000. The "releasing parties" further acknowledge and agree that any such breach of the confidentiality provisions will cause irreparable injury to the "released parties" not fully compensable by monetary damages, and that the "released parties" will therefore be entitled to obtain injunctive relief (including, but not limited to, a temporary restraining order, without prior notice, and thereafter to temporary and permanent injunctions) and/or other equitable relief as may be necessary or appropriate to prevent or curtail any such breach, actual or threatened, without prejudice to any other right the "released parties" may have at law or in equity.

Page 11 of 18

This Settlement Agreement shall be construed and interpreted in accordance with the laws of the State of Texas.

All parties agree to execute any and all supplementary documents and to take all supplementary steps to give full force and effect to the basic terms and intent of this Agreement.

Raquel O. Rodriguez, as the sole legal guardian of the person of Jose L. Rodriguez, and the Jose L. Rodriguez Trust hereby agree to INDEMNIFY AND HOLD HARMLESS the "released parties," their employees, agents, heirs and executors, successors and assigns and any and all other persons, firms, attorneys, or corporations in privity with them against any and all further claims, including but not limited to any direct actions, subrogation actions, medical liens, hospital liens, Medicare liens, Medicaid liens, injunctions, probate proceedings, third-party actions and cross-actions or damages, costs and expenses, that could have been brought by, through or under Raquel O. Rodriguez, as the sole legal guardian of the person of Jose L. Rodriguez and/or National Accident Insurance Underwriter, Inc. or any other claimant known or unknown qualified to bring a claim, and for the same consideration, do hereby transfer, convey and assign to the "released parties" and each of them an interest in all causes of action against anyone whomsoever, as long as said cause of action or judgment is based upon the "accident," to the extent necessary to fully secure and hold harmless the covenant herein and all other covenants, agreements, and warranties made herein. This indemnity agreement further includes any outstanding claims or liens of any character, made

by the United States Government, the State of Texas or any other governmental subdivision in any way arising out of this occurrence, and that any such claims or liens will be paid by the undersigned or have been waived by the lien holder. Raquel O. Rodriguez, as the sole legal guardian of the person of Jose L. Rodriguez, and the Jose L. Rodriguez Trust also agree to pay all attorneys' fees, court costs and litigation expenses on behalf of the "released parties" if any attempt is made by any other person, entity or company to prosecute any claim whatsoever brought by, through or under Raquel O. Rodriguez, as the sole legal guardian of the person of Jose L. Rodriguez, and/or National Accident Insurance Underwriters, Inc. or brought by anyone alleging to be qualified to bring a cause of action against the "released parties," arising out of said "accident."

**It is the express intention of Raquel O. Rodriguez, as the sole legal guardian of the person of Jose L. Rodriguez, and the Jose L. Rodriguez Trust that this indemnity provision shall apply even if the alleged "accident" referred to above was caused in whole or in part by the negligence, gross negligence, breach of warranty, violation of statutory or common law, defective products, or conduct of the "released parties" or their attorneys.**

It is further expressly UNDERSTOOD and AGREED that the cause of action being asserted by the "releasing parties" against the said "released parties" in that certain action brought by the undersigned, and styled Raquel O. Rodriguez and Jose L. Rodriguez vs. Riddell Sports, Inc., Riddell, Inc., All American Sports Corporation d/b/a All American/Riddell, Civil Action No. B-CV-96-177, In the United

States District Court, Southern District of Texas, Brownsville Division, is fully and finally compromised, settled and satisfied as to said "released parties" by their agreement and release and a Final Judgment will be entered in this case as to the "released parties" with each party paying their own costs; provided, however, that Defendants shall pay all unpaid reasonable fees and expenses of the Court Appointed Attorney ad Litem, Roman D. Esparza, incurred incident to the lawsuit.

THE UNDERSIGNED FURTHER STATE THAT THE FOREGOING RELEASE AND INDEMNITY AGREEMENT HAS BEEN CAREFULLY READ AND EXPLAINED TO THEM BY THEIR ATTORNEY, AND THE UNDERSIGNED UNDERSTAND THE CONTENTS HEREOF AND HAVE SIGNED THE SAME AS THEIR OWN FREE ACT AND HAVE NOT BEEN INFLUENCED IN MAKING THIS SETTLEMENT BY ANY REPRESENTATION OF ANY PARTY OR PARTIES RELEASED.

IT IS FURTHER UNDERSTOOD THAT THE PROVISIONS OF THIS RELEASE ARE CONTRACTUAL AND NOT MERE RECITALS.

**EXECUTED this _____ day of _____, 2001.**

**CAUTION READ BEFORE SIGNING:**

_____
Raquel O. Rodriguez, as the sole
legal guardian of the person of
Jose L. Rodriguez

STATE OF _____

COUNTY OF _____

Before me, the undersigned authority, on this day personally appeared Raquel O. Rodriguez, known to me to be the person whose name is subscribed to the foregoing instrument, and acknowledged to me that she executed the same for the purpose and consideration therein expressed.

Given under my hand and seal of office on this the \_\_\_\_ day of _____, 2001.

_____
Notary Public in and for the
State of Texas

Printed or Typed                          My Commission Expires:
Name of Notary:

_____

Page 15 of 18

**EXECUTED this _____ day of _____, 2001.**

**CAUTION READ BEFORE SIGNING:**

_____
Roman D. Esparza, Court Appointed
Attorney ad Litem for
Jose L. Rodriguez

STATE OF _____

COUNTY OF _____

Before me, the undersigned authority, on this day personally appeared Roman D. Esparza, known to me to be the person whose name is subscribed to the foregoing instrument, and acknowledged to me that he executed the same for the purpose and consideration therein expressed.

Given under my hand and seal of office on this the ____ day of _____, 2001.

_____
Notary Public in and for the
State of Texas

Printed or Typed                            My Commission Expires:
Name of Notary:

_____

**EXECUTED this _____ day of _____, 2001.**

**CAUTION READ BEFORE SIGNING:**

_____
Representative of National Accident
Insurance Underwriters, Inc.

STATE OF _____

COUNTY OF _____

     Before me, the undersigned authority, on this day personally appeared the duly authorized representative of National Accident Insurance Underwriters, Inc., _____, known to me to be the person whose name is subscribed to the foregoing instrument, and acknowledged to me that s/he executed the same for the purpose and consideration therein expressed.

     Given under my hand and seal of office on this the ____ day of _____, 2001.

_____
Notary Public in and for the
State of Texas

Printed or Typed                         My Commission Expires:
Name of Notary:

_____

EXECUTED this _____ day of _____, 2001.

**CAUTION READ BEFORE SIGNING:**

_____

Representative of Illinois National
Insurance Company

STATE OF _____

COUNTY OF _____

Before me, the undersigned authority, on this day personally appeared the duly authorized representative of Illinois National Insurance Company, _____, known to me to be the person whose name is subscribed to the foregoing instrument, and acknowledged to me that s/he executed the same for the purpose and consideration therein expressed.

Given under my hand and seal of office on this the ____ day of _____, 2001.

_____

Notary Public in and for the
State of _____

Printed or Typed                       My Commission Expires:
Name of Notary:

_____

Page 18 of 18