IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHER DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

JUN 2 0 2003

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| RAQUEL O RODRIGUEZ, as legal guardian of JOSE RODRIGUEZ<br>Plaintiff, | §<br>§<br>§<br>§ | Civil Action No. B-96-cv-177 |
| vs. | §<br>§<br>§ | **FILED UNDER SEAL** |
| RIDDELL, INC.; and ALL AMERICAN SPORTS CORPORATION, d/b/a RIDDELL/ALL AMERICAN<br>Defendants. | §<br>§<br>§<br>§<br>§ | |

## NATIONAL ACCIDENT INSURANCE UNDERWRITER'S RESPONSE TO PLAINTIFF'S PETITION TO ENFORCE SETTLEMENT AGREEMENT AND MEMORANDUM IN SUPPORT OF PETITION TO ENFORCE SETTLEMENT AGREEMENT

**COMES NOW** National Accident Insurance Underwriters ("NAIU") Intervenor, by and through its attorney of record Mark T. Curry, of Mark T. Curry & Associates, and files its response to Plaintiff's Petition to Enforce Settlement Agreement.

This Response to Petition To Enforce Settlement Agreement and Memorandum in Support of Petition to Enforce Settlement Agreement is made based upon the pleadings and filings of record.

I.

In August of 1995, Jose Rodriguez was injured in a football game. Mr. Rodriguez, by and through his legal guardian, Raquel Rodriguez, filed suit against Riddell, Inc., and All American Sports Corporation. National Accident Insurance Underwriters ("NAIU"), the medical insurer for the Trustees of The Scholastic Insurance Trust, intervened into the action to recover its subrogation interest. On April 9, 1999 a jury returned a verdict in favor of Jose Rodriguez and

his mother, Raquel Rodriguez, and subsequently, said verdict was appealed by Defendants. The Fifth Circuit Court of Appeals reversed the judgment and remanded the matter for retrial. Before retrial, all parties entered into settlement negotiations. On April 30, 2001 all parties reached a confidential agreement, which was approved by the court on June 19, 2001. Pursuant to the terms of the settlement agreement, NAIU received a net recovery of $280,000.00 in satisfaction of its subrogation claim, and agreed to continue paying medical benefits on behalf of Jose Rodriguez pursuant to the terms of the applicable insurance policy ($1,000,00.00 less amounts paid to date), until such time as the policy limits where exhausted.

Subsequent to the settlement agreement, in March of 2003, an NAIU insurance adjuster noted that the applicable insurance policy in question was subject to a five-year expiration provision, and that under this provision the applicable insurance policy expired prior to the time of the settlement negotiations. Pursuant to the five-year provision, medical benefits being paid on behalf of Jose Rodriguez were terminated in March of 2003. On April 28, 2003, Plaintiffs filed its Petition To Enforce Settlement Agreement.

Since discovery of the mistake, NAIU, in a good faith attempt to correct the misunderstanding, has agreed to the following terms and conditions:

- NAIU agrees to resume coverage of Jose L. Rodriguez's medical benefits until the $100,000.00 in remaining benefits are exhausted. NAIU has resumed payment of the coverage of Jose L. Rodriguez's medical benefits;

- NAIU will agree not to assert its five-year expiration provision of the insurance policy, although nothing in this agreement shall constitute a waiver of the stated five-year provision;

- NAIU will agree to pay The Markam Group $10,575.00 in attorney's fees and $2,552.64 in costs, not to exceed the aforementioned attorney's fees and costs;

- NAIU will agree to pay Blackburn and Jones $4,470.00 in attorney fees, not to exceed the aforementioned attorney's fees;

- NAIU will agree to pay The Law Office of J. Arnold Aguilar $4,100.00 in attorney's fees and $319.08 in costs, not to exceed the aforementioned attorney's fees and costs;

In light of the aforementioned agreement, Plaintiff's Petition To Enforce Settlement Agreement and Memorandum in Support of Settlement Agreement is moot. However, notwithstanding the aforementioned agreement, NAIU addresses the following issues in Plaintiff's Petition to Enforce Settlement Agreement and Memorandum in Support of Settlement Agreement.

II.

## I.  ARGUMENT: PLAINTIFFS FILED MOTION IN COURT OF IMPROPER JURISDICTION

Plaintiffs filed their motion to Enforce Settlement Agreement in the United States District Court for the Southern District of Texas, a Court without proper authority to hear the dispute. According to long established federal rules and guidelines, federal courts are courts of limited jurisdiction and empowered to hear only those cases authorized by statute and the Constitution. Kokkonen v. Guardian Life Ins. Co., 511 U.S. 375,377,114 S. Ct. 1673, 1675 (1994); Howery v. Allstate Ins. Co., 243 F.3d 912, 916(5th Cir. 2001) Subject-matter jurisdiction can not be waived or conferred by agreement of parties. Simon v. Wal-mart Stores, Inc., 193 F.3d 848, 850 (5th Cir. 1999). In this instance, Plaintiff's Petition To Enforce Settlement Agreement may be in a court without proper jurisdiction to hear the dispute.

In support of this contention, the Supreme Court in Kokonnen v. Guardian Life Ins. Co., of America, 511 U.S. 375 (1994)  held that "enforcement of a settlement agreement ... is more than just a continuation or renewal of the dismissed suit, and hence requires its own basis for jurisdiction." Id. at 378.  The Court further held that a court has "ancillary jurisdiction" to manage its proceedings, and vindicate its authority only if the parties obligate themselves to be

bound to the court by making the terms of the settlement agreement apart of the final order of dismissal. Id. at 380-81. The Court specified that in order to make a settlement agreement apart of its dismissal order, the parties should either make a separate provision 'retaining jurisdiction' or incorporate the terms of the settlement agreement in the final order. Id. In this instance, there is no question that the parties did not request that the court retain jurisdiction to enforce the settlement agreement, as a final order was not submitted in this case, and the settlement agreement did not request that the court maintain jurisdiction.

Plaintiffs may argue that the court has jurisdiction to enforce the settlement agreement, as a final judgment was never entered, and subsequently the case has remained on the court's docket and jurisdiction is still ongoing. However, the apparent oversight of the parties to not have a final dismissal order entered with the court does not retain the court's jurisdiction, nor is it indicative that the case is still alive and open on the trial court's docket. In order to have a final judgment, all issues and parties relating to the litigation must be resolved. Jobe v. Lapidus, 874 S.W.2d 764 (Tex. App.—Dallas 1994), (quoting North E. Indep. Sch. Dist. V. Aldridge, 400 S.W.2d 893, 895 (Tex 1966)). In this instance, it is clear that the settlement agreement disposed of all the parties and issues related to the case, as all parties involved in the lawsuit were a part of the litigation and all issues relating to the parties were resolved in the settlement agreement, which was approved by the court on June 19, 2001. As "a judgment is final when it terminates the litigation on the merits and leaves the court with nothing more to do except execute the judgment" Zinc v. U.S., 929 f.2d 1015, 1020 (5th Cir.1991), it is clear in this case that all issues were decided, and therefore the court's jurisdiction ended upon the court's approval of the settlement agreement.

## II. ARGUMENT: NATIONAL ACCIDENT INSURANCE UNDERWRITERS HAS COMPLIED WITH ALL THE TERMS OF THE SETTLEMENT AGREEMENT

Two years subsequent to the court approved Settlement Agreement, NAIU had fully satisfied its obligation to pay remaining benefits on behalf of Jose Rodriguez. According to the terms of the applicable policy, NAIU agreed to pay benefits on behalf of its beneficiaries up to $100,000.000.00 for injuries sustained during an applicable policy period. In this case, said policy period was for a five-year term.

According to the express language of the settlement agreement and the letter written by Mark Curry dated January 18, 2001 outlining the terms of the settlement agreement, NAIU agreed to pay benefits on behalf of Jose Rodriguez subject to the applicable policy. The settlement agreement specifically reads as follows,

> **"National Accident Insurance Underwriters, Inc., will receive a net recovery of $280,000.00 in satisfaction of its subrogation claim. National Accident will continue to pay medical benefits on behalf of Jose Rodriguez pursuant to the terms of the applicable insurance policy until such time that the policy limits are exhausted."**

In this regard, the language in the settlement agreement indicates that the benefits were to be subject to the terms of the policy. As the applicable policy was subject to a five-year term, the medical benefits paid on behalf of Jose Rodriguez were set to terminate on August 24, 2000.

NAIU, in fulfillment of its obligation under the applicable insurance policy, paid out approximately $900,000.00 prior to the settlement agreement. In addition to this, NAIU has paid benefits on behalf of Jose Rodriguez for approximately two years subsequent to the settlement agreement. As NAIU has paid benefits on behalf of Jose Rodriguez pursuant to the terms of the policy and has paid benefits for approximately three years beyond the terms of the applicable policy period, NAIU has completed it obligation under the terms of the settlement agreement.

## III. ARGUMENT. NATIONAL ACCIDENT UNDERWRITERS DID NOT WAIVE THE FIVE-YEAR POLICY LIMIT

NAIU did not waive the five-year expiration date of the applicable policy. In their Petition to Enforce Settlement Agreement, Plaintiffs contend that NAIU voluntarily waived the five-year expiration term set forth in the applicable insurance policy. Plaintiff's maintain that because Jose Rodriguez was injured on August 25, 1995, and NAIU was still paying benefits on behalf of Jose Rodriguez on April 30, 2001, approximately six years after the date of injury, that such payments somehow constituted a waiver of the five-year policy limit, or that NAIU, through counsel, made the choice to waive the maximum five year policy limit to focus on what was left to pay on a $1,000,000.00 policy in the amount of $100,000.

In review of the settlement agreement and all correspondence outlining the terms of the settlement agreement, NAIU never stated that it would waive the five-year limitation of the policy, nor did it agree to waive the policy limitation through counsel. The settlement agreement specifically states that the benefits would be subject to the terms of the applicable policy. This language clearly indicates the intent of NAIU to be bound by the term of the language in the applicable policy. Attached hereto as Exhibit "A" is the Affidavit of Donald Morylak with National Accident Insurance Underwriters, Inc. regarding the policy benefits and the five-year policy limitation. The oversight of all parties to notice that the policy had expired at the time of the settlement agreement does not constitute a waiver, but a mistake. As all parties were privy during the applicable discovery period to note the five year-policy limitation, the fact that this term was mistakenly overlooked and benefits mistakenly paid, does not constitute a waiver of the policy limitation on behalf of NAIU. Plaintiffs offer no proof that NAIU expressly waived or

intended to waive the five-year policy limitation, and as such, the overpayment of benefits by NAIU does not constitute a waiver of the five-year policy limitation.

## IV. ARGUMENT: NATIONAL ACCIDENT INSURANCE UNDERWRITERS IS NOT REQUIRED TO REIMBURSE THE $280,000.00 IT RECEIVED IN THE SETTLEMENT AGREEMENT

The Plaintiffs contend that if the five-year expiration of the policy is determined to be in effect, then NAIU should be required to reimburse the plaintiffs $280,000.00, or the amount that NAIU received under the settlement agreement. Although the plaintiffs state no factual or legal basis as to why they are entitled to the $280,000.00 reimbursement, the law concerning subrogation is clear. In Texas, insurance carriers have an equitable right of subrogation in connection with third party recoveries. NAIU, as the carrier for the Trustees of The Scholastic Insurance Trust, was entitled to their statutory right of reimbursement, hence entitled to receive the $280,000.00 as reimbursement for approximately the $900,000.00 that it paid out on behalf of Jose Rodriguez. Plaintiffs mistakenly believe that NAIU agreed to continue paying medical benefits on behalf of Jose Rodriguez in consideration of being paid $280,000.00. The $280,000.00 which Plaintiffs refer to is not in consideration of paying future benefits, but reimbursement for funds that had to be paid out due to the negligence of the third party. As the $280,000.00 is reimbursement for funds already paid on behalf of Jose Rodriguez, NAIU, under Texas statutory guidelines, is entitled to these funds. Furthermore, $30,000.00 of the $280,000.00 recovery by NAIU was paid out towards Plaintiff's expenses and a check for $30,000.00 was made payable to Evans, Keane, L.L.P.'s trust account and said payment was not to be subject to reimbursement under any circumstances.

## V. CONCLUSION

In light of the aforementioned agreement, Plaintiff's Petition to Enforce Settlement Agreement and Memorandum in Support of Settlement Agreement is moot. However, in the event that settlement is not reached or notwithstanding the aforementioned agreement, National Accident Insurance Underwriters and attorney of record Mark T. Curry, respectfully request this Court to decline to hear this cause of action for lack of jurisdiction, or dismiss Plaintiff's Petition to Enforce Settlement Agreement and Memorandum in Support of Enforcement of the Settlement Agreement for the aforementioned reasons stated in this response.

DATED: this _19th_ day of June, 2003.

By _____
Mark T. Curry
Mark T. Curry & Associates
TSB No. 05272580
510 Bering Drive, Suite 300
Houston, Texas 77057
Telephone: (713) 789-4900
Telecopier: (713) 789-4922

ATTORNEY IN CHARGE FOR NATIONAL
AMERICAN INSURANCE UNDERWRITERS

## CERTIFICATE OF SERVICE

I hereby certify that on the _19th_ day of June, 2003, a true and correct copy of the foregoing instrument has been forwarded by United States certified mail, return receipt requested, and/or by express delivery, and/or by facsimile transmission, to the following:

J. Arnold Aguilar
Law Office of J. Arnold Aguilar
Artemis Square, Suite H-2
1200 Central Blvd.
Brownsville, Texas 78520

Mark D. Kamitomo
The Markam Group, Inc., P.S.
421 West Riverside, Suite 1060
Spokane, Washington 99201

Rex Blackburn
Blackburn & Burns, L.L.P.
1101 W. River Street, Suite 220
P. O. Box 7808
Boise, Idaho 83707

Roman D. Esparza
Willette & Guerra, L.L.P.
International Plaza
3505 Boca Chica Blvd., Suite 460
Brownsville, Texas 78521

Mark T. Curry

EXHIBIT "A"

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHER DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| RAQUEL O RODRIGUEZ, as legal guardian of JOSE L. RODRIGUEZ | § § § | |
| Plaintiff, | § § § | Civil Action No. B-96-cv-177 **FILED UNDER SEAL** |
| vs. | § § | |
| RIDDELL, INC.; and ALL AMERICAN SPORTS CORPORATION, d/b/a RIDDELL/ALL AMERICAN | § § § § | |
| Defendants, | § | |

## AFFIDAVIT

BEFORE ME, the undersigned authority personally appeared, Donald Morylak, who, being by me duly sworn, deposes as follows:

That I, the undersigned, am over eighteen (18) years of age, of sound mind, capable of making this Affidavit, and personally acquainted with the facts herein stated.

That I am an Authorized Representative for National Accident Insurance Underwriters, Inc.

Attached hereto are \_\_\_\_2\_\_\_\_ pages of records showing the policy benefits and five year expiration term of the policy benefits as issued to Trustees of the Scholastic Insurance Trust. National Accident Insurance Underwriters, Inc. has paid benefits pursuant to the terms of the policy as a result of the incident which occurred in August of 1995 and in connection with its right of subrogation with Jose Rodriguez.

Said records are kept in the regular course of business at National Accident Insurance Underwriters, Inc. located at 85 West Algonquin Road, 5th Floor, Arlington Heights, Illinois, and it was in the regular course of business for an employee and/or representative with personal knowledge of the act, event or condition recorded to make the memorandum or record or to transmit information hereof to be included in such memorandum or record; and the memorandum or record was made at or near the time of the act, event or condition recorded or reasonably soon thereafter.

CNA:370:Rodriguez
Affidavit

The records attached hereto are exact duplicates of the original and it is a rule to not permit the original records to leave the premises.

Donald Motylak
Authorized Representative for
National Accident Insurance Underwriters, Inc.

SUBSCRIBED AND SWORN TO BEFORE ME on this the \_\_\_\_ day of June, 2003.

"OFFICIAL SEAL"
SUSAN M. MCNAMARA
Notary Public, State of Illinois
My Commission Expires  08/20/06

Notary Public in and for
The State of Illinois

CNA:370:Rodriguez
Affidavit

# CATASTROPHIC ACCIDENT INSURANCE

01

**Presented by**

JERRY JACOBS
INSURANCE AGENCY
P O BOX 857
RAYMONDVILLE, TX TEXAS
PHONE 210-689-2801

## Enrollment for Catastrophic Accident Insurance Plan - 1995/1996

Application is hereby made to participate in the blanket accident insurance program provided under the group Policy Number as selected below issued to the Trustees of the Scholastic Insurance Trust by Hartford Life Insurance Company, a Member of the National Accident Insurance Group.

Name of Enrolled Institution: **Los Fresnos I.S.D.**

Address: **Box 309**

City: **Los Fresnos**        State: **TX**        Zip: **78566**

**CIRCLE THE PLAN DESIRED**

| | I | II | III |
|---|---|---|---|
| Policy No. | SR17703-OBXZZ-00<br>$1,000,000 | SR17710-OBXZZ-00 | SR17725-OBXZZ-00<br>$5,000,000 |

**CHECK BELOW TO SHOW THE STUDENTS TO BE INSURED**

**Class I    ( ✕ )        INTERSCHOLASTIC ATHLETIC/ACTIVITIES COVERAGE**

All student athletes, student managers, student trainers, student coaches and cheerleaders while taking part in the sponsored and supervised Interscholastic Athletic Program of the Enrolled Institution shown above shall be insured.

(Must include all of your interscholastic athletes)

**Class II    ( )        STUDENT ACTIVITIES COVERAGE**

All students of the Enrolled Institution while attending such Institution during normal class time and/or while taking part in its sponsored and supervised activities, other than its Interscholastic Athletic Programs shall be insured.

a. Day Students
b. Boarding Students
c. Summer School Students (not enrolled as normal school year students)

(Must include all of your students)

**Class III    ( )        NON-ATHLETIC CLUBS OR SOCIETIES COVERAGE**

All students while taking part in the sponsored and supervised Non-Athletic Clubs or Societies of the Enrolled Institution shown above shall be insured.

(Must include all of your students in the category above)

Class III coverage is included if you have purchased Class II coverage.

Minimum premium is $320.00.

Coverage will become effective on the date indicated below provided the premium and enrollment form is received prior to such date. However, the effective date cannot be prior to August 1, 1995 and all policies terminate on August 1, 1996.

| | | PREMIUM CALCULATION | | |
|---|---|---|---|---|
| Requested Effective Date: **8/1/95** | Class | Rate | x  No. of Students | = Premium |
| Authorized Signature: *D. Mark Wallace* | I | 2 ⁰⁰ | x  910 | = 1820 ⁰⁰ |
| Printed Name of Authorized Person: **D. Mark Wallace** | IIa | ____ | x ____ | = ____ |
| | IIb | ____ | x ____ | = ____ |
| Title: **Purchasing/Risk Mgr** | IIc | ____ | x ____ | = ____ |
| | III | ____ | x ____ | = ____ |
| | | | Total Premium Due: | $ 1,820 ⁰⁰ |

RECEIVED
NOV 0 4 2002



**Section III**                    **BENEFITS**                    Code B-MZ-1

## MEDICAL/DENTAL EXPENSE

This Coverage applies only to those insureds who are in a Class to which such Benefit applies as shown in Item (6) of Section I.

### DESCRIPTION OF BENEFITS

When "injury" to an insured shall require necessary medical treatment, we will pay up to the "usual and customary charges" for an "Eligible Loss" during the treatment of such "injury" for the following services and supplies prescribed by a "physician":

(1)   room and board charges and other medical charges made by a "hospital" or "extended care facility";
(2)   treatment by a "physician" who is not a member of the insured's "immediate family";
(3)   care by a licensed or graduate nurse, who is not a member of the insured's "immediate family", but not to exceed $30,000 per calendar year when the insured is not hospital confined;
(4)   use of a professional ambulance service for necessary transportation for treatment of such injury;
(5)   x-ray and laboratory examinations;
(6)   oxygen;
(7)   casts, splints, crutches and braces (other than dental braces);
(8)   blood or blood plasma;
(9)   drugs and medicines;
(10)  treatment of sound natural teeth;
(11)  rental of durable medical equipment of a medical or surgical nature which can be utilized only for treatment of such injury (no coverage is extended for equipment of items used solely for comfort or convenience); or
(12)  physical or occupational rehabilitation charges.

In no event for charges made by a "physician" in the treatment of a mental or nervous condition will we pay more than $50.00 per visit, for more than one visit per day or for more than 50 visits per calendar year.

In the event an insured should be confined in a private room we will pay for such room charges, but not to exceed the average semi-private room rate charge by the facility in which the insured is confined.

Confinement in an "extended care facility" must commence immediately following a "hospital" confinement of at least 5 days and must be certified by the insured's "physician" as being medically necessary.

Nursing charges when the insured is not hospital confined will only be allowed if such charges are part of a "home health care plan".

### BENEFIT PERIOD

Benefit payments for an "Eligible Loss" will begin once the Deductible has been satisfied. Benefits will continue to be paid as long as the insured sustains an "Eligible Loss" subject to a five year Maximum Benefit of $1,000,000.

### DEDUCTIBLE

The Deductible shall be $25,000 of Medical/Dental Expenses incurred within two years from the date of "injury".

The Deductible will be waived if the insured suffers a "Presumptive Disability".